(OCTOBER TERM, 1910.)

DICKERSON V. STATE.

(No. 628.)

PERJURY—INFORMATION—SUFFICIENCY—PLEA IN BAR—SUFFICIENCY —PRACTICE—HARMLESS ERROR—APPEAL AND ERROR—MOTION FOR NEW TRIAL—MATERIALITY OF ALLEGED FALSE TESTIMONY WHERE PERJURY IS CHARGED—PROOF—INSTRUCTIONS—HARMLESS ERROR— EVIDENCE—ADMISSIONS—EXCEPTIONS—GROUPING INSTRUCTIONS IN MOTION FOR NEW TRIAL.

1. Under the statute providing that it shall be sufficient in an indictment or information for perjury to set forth the

substance of the offense charged, an information which charges that the defendant on a day and year named upon an issue duly joined willfully and corruptly gave certain alleged false testimony in a matter material to such issue during his trial in the District Court of a county named upon a charge of rape; the said court having jurisdiction to try such issue, sufficiently alleges the materiality of the alleged false testimony, without setting out all or part of the testimony to show the connection and thus disclose such materiality.

2. It was not necessary that the information should state the date of the alleged rape which had been charged in the case wherein the alleged false testimony was given.

3. The defendant charged with perjury in the giving of alleged false testimony material to the issue during his trial upon the charge of rape filed a plea in bar setting up that he had been charged, tried, and acquitted of the crime of rape by a jury duly impaneled and sworn to try the issues joined. *Held,* (1) The plea was insufficient, since he had been acquitted of the crime of rape, whereas he was here charged with the crime of perjury. (2) Though the plea should have been demurred to, the striking of the plea as frivolous was harmless error.

4. Where alleged error in the admission of certain evidence was not specified as a ground for new trial in the motion therefor it is not entitled to consideration.

5. An information for perjury alleging generally that the false testimony which defendant is charged with having given in a former trial was material to the issue upon that trial, the materiality of such testimony is a matter of proof.

6. Upon the trial of a defendant for the crime of perjury alleged to have been committed by giving false testimony on his trial for the crime of rape to the effect that he did not have a disease known as gonorrhea at the time of the alleged rape and had never had such disease, a part of the evidence given by the prosecutrix in the rape case and her physician was admitted by which it appeared that said prosecutrix had testified on the trial of defendant for rape that she had been assaulted by defendant, and shortly thereafter found that she was infected with a venereal disease, and that the physician aforesaid whom she consulted had testified that he found her suffering from a recent infection of gonorrhea. *Held:*

(1) That the evidence was competent to show the materiality of defendant's evidence upon which the per- jury was assigned, but not to prove the perjury.

(2) There being no dispute as to whether either of said witnesses had so testified, the question of the ma- teriality of the alleged false testimony of defendant was one of law for the court.

(3) The failure to instruct the jury limiting the consideration of the former evidence to the purpose for which only it was competent was error.

(4) . The error in failing to so instruct was not prejudicial, for the reason that the same witnesses were examined and testified to substantially the same facts on the trial for perjury.

7. Where the jury could not have been misled, or when a fair inference may be drawn from the record that no preju- dice has resulted to the accused, the judgment should not be reversed for error in admitting evidence.

8. Admissions against interest or actions indicative of guilt are always competent as evidence against a party accused of crime.

9. An admission by the defendant that he had the disease named in the information at a former time does not har- monize with his evidence on his trial for rape and tended to prove the falsity of such evidence, and testimony show- ing such an admission made after the commission of the al- leged rape was therefore competent and material.

10. The assault upon the prosecutrix in the rape case having occurred, according to her testimony, on August 7, 1908, from which assault she claimed to have become infected with gonorrhea, evidence was admissible on defendant's trial for perjury, given by witnesses who were with him in the county jail from and after September 10, 1908, to the effect that the defendant was diseased with and was treating himself for gonorrhea during all the time such witnesses were in jail with him.

11. There being evidence tending to show that defendant was so diseased prior to and at the time of the assault, evi- dence of his condition of health within a reasonable time subsequent to the assault was relevant to the issue whether he was so diseased at the time of the assault. What would be a reasonable time within which such condition might be shown rested largely in the discretion of the court.

12. Defendant was charged with having committed perjury in testifying on his trial for rape that he did not have a certain venereal disease at the time of the alleged assault and had never had such disease; it appeared that the prosecutrix had testified that the defendant assaulted her and thereby caused her to become infected with such disease. An instruction was requested by defendant that in order to convict defendant of perjury it was necessary to find that he was afflicted with the disease at the time of the alleged assault *and* at some other time in his life. *Held*, that it was not error to modify the instruction by substituting "or" for "and," so as to read that in order to convict the jury must find beyond a reasonable doubt that the defendant was afflicted with the disease at the time of the assault *or* at some other time in his life.

13. In perjury it is not necessary that the alleged false testimony bear directly upon the issue. It is sufficient though it be a collateral matter or constitute material circumstances legitimately tending to prove or disprove facts which are in issue, or if it tend to strengthen or weaken the evidence in support of or against the issue upon the trial in which it was given.

14. The time when the defendant became infected with the disease was not material except as it bore upon the question as to whether he was so diseased at the time of the alleged assault.

15. Testimony upon the former trial of defendant by a witness since deceased was offered in his behalf, without stating the purpose of the offer, whereupon the judge indicated that he considered it incompetent. Counsel then stated that he desired to make the offer more complete, to which the judge replied that counsel need not state it in the presence of the jury, but to write it out and hand it to the stenographer. An exception was then taken without further explanation, and afterwards the offer of proof was written out and filed with the stenographer. *Held*, that the record failed to show a ruling upon the offer, and that the exception went only to the refusal of the court to permit the offer to be stated in the presence of the jury.

16. In a motion for new trial it is incumbent upon the party to point out with definiteness and particularity the error of which he complains, so that the trial court may pass upon the exact question which may thereafter be presented for review.

17. A party cannot complain on error of the giving of a single instruction, where the only reference thereto in the motion for new trial was as one of a group, error in giving all of them being made a ground for new trial, and one or more of the instructions so grouped appear to be correct.

### (ON PETITION FOR REHEARING.)

18. A general specification in a motion for new trial of "errors of law occurring at the trial of said cause and to which said errors of law and rulings of said court the defendant at the time duly excepted," is too indefinite to show that a particular question was brought directly to the attention of the trial court.

19. While the materiality of the testimony on which perjury is assigned is a question of law for the court, it may become a mixed question of law and fact, in which case the court should submit it to the jury with proper instructions.

[Decided December 3, 1910.]                    (111 Pac. 857.)
[Rehearing denied June 14, 1911.]

ERROR to the District Court, Laramie County, HON. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*N. R. Greenfield,* for plaintiff in error.

The information is insufficient for the reason that it does not allege in definite and certain language, the materiality of the false testimony. The alleged false testimony could not ordinarily be in any way material to an issue arising out of a plea of not guilty to a charge of rape. It might be a question material to the issues in such a case whether the defendant was diseased at the time of the rape, but whether he was so diseased before or after that time would be wholly immaterial. The information does not allege the date of the assault charged by the information upon which the defendant was previously tried. It is submitted, therefore, that the motion to quash should have been sustained. (2 McClain's Cr. L., Sec. 883.) The information is also defective for the reason that it does not charge that

the defendant knew to be true the facts which the information alleges to be true. The argument as to the motion to quash is equally applicable to the demurrer which was filed and overruled. There are two methods provided by law for charging the materiality of the testimony alleged to be false. The first is to allege generally that the testimony in question was material, and the second to set forth in the information facts from which the materiality of the testimony appears. The first method is the one more generally employed, but where it clearly appears from the facts set forth that the testimony could not have been material, the defect is not remedied by a general allegation that it was material. The allegation of materiality in the information here is contradicted by the other facts recited in the information, and the demurrer as well as the motion to quash should have been sustained. (16 Ency. Pl. & Pr. 344; Wilkinson v. People, 226 Ill. 135, 80 N. E. 699; Rosebud v. State, (Tex. Cr.) 98 S. W. 858; McCoy v. State, 43 Tex. Cr. 606; Barton v. State, (Tex. Cr.) 95 S. W. 123; State v. Argo, (Tenn.) 100 S. W. 106; Crow v. State, (Tex. Cr.) 90 S. W. 650; Markey v State, 47 Fla 38, 37 So. 53; Higgins v. State, (Tex. Cr.) 97 S. W. 1054; Brown v. State, (Fla.) 36 So. 705.)

A plea in bar is a constitutional right of a defendant when brought before the court to plead to the information. (Const., Art. I, Sec. 11.) The plea filed in the case at bar is in proper statutory form and it was error to strike it from the files or dismiss it. It was the duty of the prosecutor to make reply to the plea as provided by Section 5331, Revised Statutes, and the issue joined on the plea should have been submitted to the jury as the statute provides. (Pizans v. State, 20 Tex. App. 139; Coon v. State, 21 Tex. App. 332, 17 S. W. 351; Troy v. State, 10 Tex. App. 319; Goode v. State, 70 Ga. 752; Lovett v. State, 80 Ga. 255, 4 S. E. 912; U. S. v. Butler, 38 Fed. 498; Cooper v. Com., 106 Ky. 909. 45 L .R. A. 216, 90 Am. St. 275.)

The trial court took the view that the question of materiality was entirely for the court to determine, a view in which we do not agree, and the jury should therefore have been excluded while testimony bearing upon the materiality was being heard by the court. The files of the rape case were improperly and erroneously admitted in evidence. These papers could have had no other tendency than to prejudice the jury against the defendant. The court erroneously allowed the prosecution to introduce so much of the testimony of the prosecutrix in the rape case as it deemed necessary to prove the materiality of the alleged false testimony, thus leaving the mattter entirely in the discretion of the prosecution and shutting off all objection on the part of the defendant. The testimony of the prosecutrix and Doctor Johnston that had been given on the former trial could not have any other effect than to inflame the jury and prejudice it against defendant. Further, it was wholly immaterial and did not in the slightest manner bear upon the materiality of the evidence upon which perjury was assigned. It was admitted without any instructions from the court limiting its purpose and effect, and it left the jury where it might convict the defendant of rape and not of perjury. It not being permissible to introduce evidence to contradict these statements, and the court refusing to instruct as aforesaid, the admission of the evidence was prejudicial. The evidence of the defendant in the rape case was properly read to the jury to establish the fact that he so testified, although it was not offered for that purpose, but the evidence of other witnesses on the trial should have been limited by instructions to the only purpose for which it was admissible. (Freeman v. State, 43 Tex. Cr. 580, 67 S. W. 499.) The testimony of the witnesses who were in jail with the defendant to the effect that the latter was suffering with the disease while he was in jail related wholly to an immaterial part of the assignment of perjury, viz: that he had never had the disease. It is clear that the entire evidence of these

witnesses should have been excluded. The evidence as to the assault should have been excluded for the reason that the defendant had been acquitted of the crime of rape. When a fact has once been judicially determined, that determination is conclusive in all controversies between the same parties, though the subject matter of the two controversies are not the same. (U. S. v. Butler, 38 Fed. 498; Cooper v. Comm., supra; Petit v. Comm., supra; Coffey v. U. S. 116 U. S. 436; Green v. Bogue, 158 U. S. 478; Freeman on Judgments, 253.) Moreover, the questions propounded to the prosecutrix by counsel for the State called for conclusions, and the objections thereto should have been sustained. The testimony of other witnesses, such as that of Claude Smith, related to a wholly immaterial matter.

It was error to exclude the testimony of Doctor Kieffer given upon the former trial of the defendant, said witness having died since that trial. An offer of proof was duly made. The evidence was material and vital, and it was clearly admissible. (5 Ency. of Ev. 895, 896, 897; Wharton's Cr. Ev. 227; 2 Wigmore on Ev., 1401-1418; Foley v. State, 11 Wyo. 464; U. S. v. MacComb, 5 McLean, 286; Kendrick v. State, 10 Humph. 479; Greenwood v. State, 35 Tex. 587.) The testimony of Doctor Kieffer was not only admissible and competent, but it was of such character and weight that it is safe to say it would have acquitted the defendant, so that its exclusion was harmful and reversible error, ever were there no other error in the case.

The court did not attempt to define the issues in any of the instructions given to the jury, but in the second instruction the elements of crime necessary to be proven beyond a reasonable doubt in order to convict were incorporated. The instruction fails to incorporate one important and vital element, and it is therefore clearly erroneous. It was necessary to find that the alleged false testimony was not only false, but also material to the issues in the rape case, and although the question of materiality is generally

a question of law for the court, in this case it was a question of fact to be determined by the jury under a proper instruction. (2 McClain's Cr. L., Sec. 866; 2 Bishop Cr. L., Sec. 935.) The definition of reasonable doubt given in the third instruction is erroneous and prejudicial. It was defined in that instruction as a doubt for which a reason can be given; that it must arise out of the evidence in the case; and that the jury cannot hunt up doubts, &c. (Siberry v. State, 133 Ind. 677; State v. Cohen, 108 Ia. 208; Morgan v. State, 48 Ohio 371; Cowan v. State, 22 Neb. 519; Carr v. State, 23 Neb. 749; People v. Stubenvail, 62 Mich. 329; Brown v. State, 105 Ind. 385; Harvey v. State, 125 Ala. 47; Klyce v. State, 78 Miss. 450.) We respectfully submit that this erroneous instruction is sufficient to cause a reversal of the case. Prosecutors should learn that the term "reasonable doubt" defines itself and that elaboration of it only leads to error and confusion.

· The fifth instruction is erroneous for the reason that it assumes that certain matters were testified to in the rape case, instead of leaving that question to be determined by the jury, like any other fact, and because the only question it left for determination by the jury was the determination of the falsity of the testimony mentioned. The court practically instructed the jury that the defendant testified in the rape case as alleged in the information and that such testimony was material to the issues in that case. It was error to so instruct. (2 McClain's Cr. L. 866, 2 'Bishop Cr. L. 935; Foster v. State, 32 Tex. Cr. 39; Washington v. State, 23 Tex. App. 236; McAvoy v. State, 39 Tex. Cr. 684; Young v. People, 134 Ill. 37.) The eighth instruction which was given on behalf of the State is particularly vicious because it singles out the defendant from the other witnesses in the case, and instructs them that the fact that he is the defendant has a tendency to impeach and discredit his testimony, but that the fact is not of itself sufficient to have that effect, though the jury are urged to bear in mind that he is the defendant in considering the tes-

timony. This instruction was error. (Bird v. State, 107 Ind. 154; Hartford v. State, 96 Ind. 461; Veatch v. State, 56 Ind. 584; Unruh v. State, 105 Ind. 117; State v. Austin, 113 Mo. 538; State v. Miller, 162 Mo. 253; State v. Smith, 8 S. D. 547; Tardy v. State, 46 Tex. Cr. App. 214; State v. McDonald, 129, N. C. 523; Long v. State, 42 Fla. 612.)

The court erroneously modified the 5th instruction requested by the defendant. If the jury followed the instruction as modified it would be impossible to say whether the defendant was convicted on the ground that he had the disease mentioned in the information during the month of August, 1908, or had such disease at any other time in his life, and therefore the verdict cannot be sustained. (2 McClain's Cr. L. 883.) It was the duty of the court to have withdrawn from the consideration of the jury the immaterial assignment of false testimony. It was entirely immaterial whether the defendant was afflicted with the disease at some other time than when it was alleged or claimed that he had assaulted the prosecutrix, and the seventh instruction requested by defendant which so stated the law should have been given. It was also error for the court to refuse the defendant's eighth instruction which properly limited the consideration to be given to the testimony given upon the former trial, and which had been admitted to show materiality. (Ross v. State, 40 Tex. Cr. 349, 50 S. W. 336; Littlefield v. State, 24 Tex. App. 167. 5 S. W. 650; Maines v. State, 23 Tex. App. 568; 5 S. W. 123; Washington v. State, 23 Tex. App. 336, 5 S. W. 119; Davidson v State, 22 Tex. App. 372, 3 S. W. 662; State v. Brown, 111 La. Ann. 831, 35 So. 501.) In criminal cases it is the duty of the court of its own motion to give instructions limiting the effect of evidence competent only for a special purpose, and a failure to object or except will not cure an error in this respect. (3 Ency. of Ev., 189:)

We are aware that appellate courts do not for light reasons set aside the verdicts of juries, but in this case it does seem that the verdict is not sustained by the evidence.

Eliminating the immaterial assignments of perjury and leaving only the question whether or not the defendant was afflicted with the disease in August, 1908, we find that there is no testimony whatever bearing upon that point. All of the testimony of the witnesses brought from the county jail and from the penitentiary related to the fact that the defendant might have been afflicted with the disease some time after August, 1908, which we contend was a wholly immaterial matter. The whole case seems to us to have been a travesty on justice, and we submit that the verdict is contrary to both the law and the evidence.

*W. E. Mullen,* Attorney General, for the State.

The exceptions taken to the information appear to be technical. It conforms to the statutory requirements by setting forth the substance of the offense charged. It alleges the court in which the testimony was given, its authority to administer the oath and the averments which falsify the matter or matters wherein the perjury was assigned. This is sufficient under our practice. (Comp. Stat. 1910, Sec. 6176.) It is well settled that there are two methods for charging the materiality of alleged false testimony in the perjury case. First, to allege generally that the testimony was material, and second, to set forth facts from which the materiality appears. . Counsel concedes that the first method is the one generally employed and approved by the decided weight of authority. This was the method employed in the case at bar. It is the method followed in Indiana in prosecutions for perjury, and our statute on the subject was borrowed from that State. (Williams v. State, 68 Ala. 531; State v. Flagg, 27 Ind. 24; State v. Anderson, 103 Ind. 170; State v. Reynolds, 108 Ind 353; Dilcher v. State, 39 O. St. 130; People v. Brilliant, 58 Cal. 214; Gandy v. State, 24 Neb. 717; Thompson v. People, 59 Pac. 51; 16 Ency. Pl. & Pr. 343.) But it is contended by counsel that the general averment of materiality is followed by a statement of facts contradicting the general averment. That portion of the information is doubtless re-

ferred to which alleges that the defendant was as he well
knew, at the time he testified to the contrary, in fact dis-
eased during the month of August, 1908, and had been so
diseased both before and after said month of August and
prior to the date of his said testimony. Wherein these al-
legations contradict the general averment of materiality is
not made clear by counsel's argument. Under the peculiar
circumstances of the case it was proper to show the dis-
eased condition of the defendant to have been continuous
over a period of time within which the principal offense
was committed. The particular form of disease in question
was shown by the testimony to have been continuous in
character and where a diseased condition at a given time
was a material fact in the case, proof of a diseased condi-
tion covering a period of time both before and after such
given time might be one means whereby the existence of
disease on a certain day of the period could be established.
Moreover, the charge of perjury was based upon facts
which had been made a matter of record in the court
where the alleged false testimony was given, and the trial
court was the judge of the materiality of the testimony
given at the former trial. The demurrer reaches prac-
tically the same points as those raised by the motion to
quash. As will appear from the testimony given on the
trial of the defendant on the charge of rape, the prosecution
was not confined to proofs of the diseased condition of the
defendant on a specified date, but was permitted to prove
collateral facts tending to prove the existence of a dis-
eased condition on a specified date. This being true, the
testimony relating to the diseased condition of the defend-
ant covering a given period of time were held to be ma-
terial to the issues in the case wherein the alleged false tes-
timony was given.

The statute does not authorize such a plea in bar as was
filed in this case. It only permits such a plea when the de-
fendant has been convicted, acquitted or pardoned for the
same offense. The acquittal of the defendant on the charge

of rape was not an acquittal on the charge of perjury. (Comp. Stat., Sec. 6195.) The files in the former case were introduced to show the necessary jurisdictional facts. The materiality of the false testimony could not be shown without a record of the proceedings in the former case. Counsel urges that the recital of certain portions of the testimony given by the prosecutrix in the former case was very prejudicial to the defendant. Criminal prosecutions are not conducted for the purpose of exonerating persons charged with crime. Proof of guilt is always prejudicial to a defendant, and where collateral facts are so connected with facts that should be proven under a specific charge that their separation is impossible, the courts are not to blame. It would have been impossible to show the materiality of the false testimony without placing before the jury the entire array of facts introduced by the record of the former testimony of the prosecutrix and Dr. Johnston. The testimony of the witnesses who had been confined in jail with the defendant at a time thirty days or more subsequent to the commission of the offense for which he had been previously tried was clearly competent and material. The continuous nature and character of the disease was shown throughout the case.

The materiality of the alleged false testimony is as a general rule a question for the court. (30 Cyc. 1456; Thompson v. People, 26 Colo. 496, 59 Pac. 51; State v. Lewis, 10 Kan. 157; Montgomery v. State, (Tex.) 40 S. W. 805; Cothran v. State, 39 Miss. 541.) Counsel for plaintiff in error complain of instruction number three which contains a definition of reasonable doubt. It is true that the words "a doubt for which a reason can be given" are held to be misleading in the cases cited, but there is a wide latitude of opinion as to the effect of such phraseology in a charge of reasonable doubt, and it does not appear very clear that in any of the cases cited a reversal was granted solely on this ground. It is difficult to see how the substantial rights of the defendant were prejudiced by the instruc-

tion.   In the fifth instruction given for the prosecution the court calls the attention of the jury to certain testimony alleged to have been given on the former trial.   But the instruction goes no further than the information.   There is a distinction, of course, between a fact alleged and a fact assumed.   While the instruction might have been framed in different language, it does not assume the alleged fact to have been proven in the perjury case.   The instruction was given to point out to the jury the materiality of the alleged testimony, as a matter of law, and in doing this the court did not invade the province of the jury.   The eighth instruction is complained of, but we find the substance of that instruction upheld in the case of Younger v. State, 12 Wyo. 24.

With reference to the fifth instruction requested by the defendant it will be noticed that the accused on his former trial denied that he had ever been afflicted with the disease in question.   This denial was perhaps broader than was necessary, but it was intended to cover a period of time so remote as to be immaterial, but at some time impossible of separation for the purposes of the case; therefore the trial court deemed it necessary to modify the instruction as originally requested by the substitution of the word "or" for the word "and."   The seventh instruction requested by the defendant was a departure from the theory upon which the charge of rape had been tried. Whether the accused was diseased at all was not conclusive of guilt.   But it was regarded as an important circumstance of a corroborative character material to the issues, and evidence was admitted showing a diseased condition prior and subsequent to August, 1908.   The instruction attempted to confine the evidence of such condition to the month of August, when as a matter of fact the jury on the trial of the defendant for rape had before them for consideration evidence relating to the diseased condition of defendant at a time prior and subsequent to August, 1908, all of which had been specifically denied by defendant, and all of which

was held to be material to the issues then before the court. It would seem, therefore, that no error was committed in refusing this instruction.

It is urged that it was error to refuse instruction number eight requested by the defendant. That instruction was ambiguous and unintelligible. It refers to certain evidence without pointing out what part thereof. This would leave the minds of the jury in a state of uncertainty as to what part of the record was referred to. No request was made for an instruction limiting the effect of the quoted portions of the former evidence introduced to show materiality. Moreover, there is no reasonable probability that the jury were misled by this testimony for the want of an instruction limiting its consideration for the reason that the jury were clearly advised by the court as to the elements of the crime for which the defendant was being tried. The defendant seems to have had a fair trial in the court below, and the judgment should be affirmed.

*N. R. Greenfield* and *Samuel A. King,* on petition for rehearing.

There is nothing in the statute requiring an applicant for a new trial to specify in his motion anything further than the statutory ground. One of the grounds is "errors of law occurring at the trial." When that is alleged it is sufficient to present to the court any matters of error that occurred upon the trial involving a question of law. The statute does not require a detailed statement of the errors relied upon. Rule 13 of the Supreme Court does not conflict with this proposition. The court does not possess the power to adopt rules in conflict with the statutory provision. But only to adopt reasonable rules for the guidance of litigants in presenting questions to the courts in respect to matters not provided for by statute, and we take it there is no attempt made by rule 13 to enlarge or restrict the plain provisions of the statute. Under that ground stated in the motion, therefore, the erroneous admission of

any evidence is properly presented to the court by the motion.

This court held that it was error to permit the testimony in the former case which was introduced to show the materiality of the alleged false testimony of the defendant to be read in the presence of the jury. The court further held that the defendant had requested a proper instruction limiting the consideration to be given to that testimony. But it was also held that the error was not prejudicial. The proposition that the error was not prejudicial is one to which we cannot assent, and we respectfully ask a reconsideration of that question, particularly in view of the facts quoted in the opinion of the court to the effect that the testimony of the prosecutrix went into detail regarding the alleged assault, her resistance, &c. No part or portion of that testimony had anything whatever to do with the question under consideration. It may be true that it was competent upon the trial for rape, but to permit it to be considered upon the perjury trial could have had no other effect than to prejudice the jury against the defendant in a most improper manner. We earnestly insist that the conclusion that such testimony was not prejudicial was erroneous and in violation of well settled principles of law. (12 Cyc. 912; People v. Smith, 172 N. Y. 210; People v. Greenwall, 108 N. Y. 296; People v. Wood, 126 N. Y. 249; People v. Corey, 148 N. Y. 476; People v. Koener, 154 N. Y. 355; Green v. White, 37 N. Y. 405; Stokes v. People, 53 N. Y. 164; People v. Strait, 154 N. Y. 165; People v. Helmer, 154 N. Y. 596; Kirby v. People, 15 N. E. 33; McCormick v. Jacobson, (Ia.) 35 N. W. 627; George v. Ry. Co., 53 Ia. 503; People v. Wallace, 89 Cal. 158; People v. Fair, 43 Cal. 137; People v. Dye, 75 Cal. 112; People v. Tilley, (Cal.) 24 Pac. 290.)

The testimony which we have objected to so strenuously is not material to any issue in this case. It was nothing more than a direct attack upon the defendant's character with reference to a charge upon which he had been ac-

quitted, and it placed him in a position of being unable to again answer conclusively the charges which a competent jury had decided in his favor. The courts are always jealous of the rights of parties and that they be fully protected in their legal rights. (Carter v. Wakeman, (Ore.) 78 Pac. 362; People v. Maine, (N. Y.) 59 N. E. 696.) We deem it proper to direct the court's attention to the following cases which show conclusively that even though a portion of this testimony might have been received by the court, in order to enable the court to determine whether or not the testimony charged as having been perjury was material, that the court should have limited by a proper instruction such testimony: 3 Ency. Ev. 188, 189; Davidson v. State, 22 Tex. App. 336; Ross v. State, 40 Tex. Cr. 349; Littlefield v. State, 23 Tex. App. 167; Maines v. State, id. 568; Washington v. State, 28 Tex. App. 336; State v. Brown, 111 La. Ann. 831; Byrne v. Byrne, 113 Cal. 294.

If the instruction requested was proper, and this court has so said, then how can it be that defendant was not prejudiced by the failure to give the instruction, particularly when under the law in criminal cases it is the duty of the court of its own motion to give an instruction limiting the effect of evidence competent only for a special purpose. Whether or not the testimony given by the witnesses Kelley, Fitzsimmons, Drake and Smith was competent is an important question. In our opinion the testimony should not have been received, and after it was received it should have been stricken from the record upon the motions made for that purpose. The information charged the defendant with giving certain false testimony. It was claimed that he had committed the crime of rape on August 7, 1908, and thereby transmitted to the prosecutrix a certain disease. The statement of the defendant was positive that he was not afflicted with said disease during the said month of August. His statement that he had never, to his knowledge, been so diseased was a qualified statement. On

his trial for rape it is possible that it was a material issue whether he had been afflicted with the disease in August, but it was wholly immaterial whether he was afflicted with it in September or at any other time during that year. But whether he was afflicted before or after that month is wholly immaterial for he had testified only that he had never, to his knowledge, had the disease. The only question for consideration was, did the defendant have the disease in question at the time it is claimed he committed the crime of rape, and we respectfully contend that the testimony did not tend in any manner to establish the fact that the defendant committed perjury in stating that he did not have it at that time, and testimony that he was suffering from some venereal disease by witnesses who had no special knowledge or training in relation to the particlar ailment was extremely prejudicial to the defendant. It did not establish the falsity of the defendant's statement, and was a conclusion of the witnesses which they were not entitled to give. The principle of law invoked by the court in sanctioning the admissibility of this testimony we respectfully contend does not apply to the case at bar, because in an insanity case it is well known that the disease may manifest itself in various forms; it may be intermittent or chronic, and if a lay person is called to testify regarding the insanity of the individual he must state the particular acts and conduct of the subject, and in some instances is permitted after so doing to give a conclusion based upon such facts. But in the case at bar we submit that there was no evidence whatever to show that the defendant ever at any time prior to August had the disease or knew that he had had it, with the possible exception of the testimony of Kelly, who was permitted to testify with regard to a conversation concerning the defendant's condition when in Arizona, but this would not justify the admission of the testimony of the other witnesses, and it was incompetent for the reason that it did not tend to show that the defendant was similarly afflicted in August, 1908.

We believe that the court took a too narrow view of the exception taken by the plaintiff in error as to the offer of the testimony of Doctor Kieffer. The court had refused to admit the testimony. The ruling was as evident as if the court had then said that the objection was sustained. It was to all of the proceedings that counsel excepted. Not only the refusal to allow the offer of the evidence to be stated in the presence of the jury; but to the statements which had been made by the court to the effect that the evidence was incompetent. We feel that the view taken by the court of the effect of the exception is extremely technical and not justified by the record. It has the effect of resolving the doubt, if any there be, against the defendant, when it should be resolved in his favor. That the evidence was competent there can, in our judgment, be no doubt, and exclusion of the testimony was extremely prejudicial.

Instruction number 3 given at the request of the prosecution evidently contains an erroneous definition of the term "reasonable doubt," and inasmuch as that term is used in practically all of the instructions given, both on behalf of the state and the defendant, it cannot have been other than prejudicial to the defendant. Where the instructions for the state as a whole present an erroneous view of the law as applied to the facts in the case a general exception is sufficient. (Palmer v. State, 9 Wyo. 49.)

· Scott, Justice.

The plaintiff in error, defendant below and who will hereafter be referred to as defendant, was charged by information duly filed in the District Court of Laramie County on June 1, 1909, tried, convicted and judgment pronounced against him for the crime or perjury. He brings the case here on error.

From the record it appears that he was tried in the District Court of Laramie County at the regular December, 1908, term of that court upon a charge of rape. He was sworn and testified as a witness in his own behalf. It is

upon a part of his testimony there given that perjury is assigned in the case before us.

1. It is urged that the court erred in overruling defendant's motion to quash the information. Section 6186, Comp. Stat. 1910, is as follows:

"Sec. 6186. A motion to quash may be made in all cases where there is a defect apparent upon the face of the record, including defects in form of the indictment, or in the manner in which the offense is charged." It will be observed that under our statute the same procedure is applicable to prosecutions upon information as by indictment. (Sec. 6181.) It is stated in the defendant's brief that: "The motion to quash is principally upon the ground that the information does not sufficiently charge the issue in the cause wherein it is alleged the defendant testified falsely and is so indefinite and uncertain that it does not inform the defendant of the nature of the offense charged against him, and does not state facts sufficient to constitute an offense or crime under the laws of this State." The charging part of the information is as follows:

"Comes now Charles L. Rigdon, County and Prosecuting Attorney of the County of Laramie, in the State of Wyoming, and in the name and by the authority of the State of Wyoming, informs the court and gives the court to understand that Pete Dickerson, late of the county aforesaid, on the 17th day of December, A. D. 1908, at the County of Laramie, in the State of Wyoming, before the District Court of the First Judicial District, sitting in and for the County of Laramie, in the State of Wyoming, Hon. R. N. Matson, Judge of said court, presiding, on an issue within the jurisdiction of said court duly joined and tried before a jury of the county in that behalf duly sworn, on a charge of rape, between the State of Wyoming, as plaintiff, and Pete Dickerson, as defendant, did then and there appear as a witness upon the hearing thereof and was in due form of law sworn by said court, having competent authority and full power to administer to him the oath of

a witness before said court. Whereupon it then and there became and was a question material to said issue whether the said Pete Dickerson had been diseased with a certain disease named and known as gonorrhea, and to this the said Pete Dickerson did then and there feloniously, knowingly, wilfully, corruptly, and falsely, on such oath as aforesaid, swear, testify and say in substance and effect that he (meaning the said Pete Dickerson) was not at any time diseased with gonorrhea during August (meaning the month of August, 1908) and had never to his knowledge been diseased with gonorrhea; whereas in truth and in fact, as the said Pete Dickerson then and there well knew, said testimony and matters, as aforesaid by him testified to and declared to be true, were false and untrue; and the said Pete Dickerson was diseased with gonorrhea during the month of August, 1908, and had been diseased with gonorrhea both before and after the said month of August, 1908, ánd had been diseased with gonorrhea prior to the date of his said testimony in said trial, that is to say, prior to the 17th day of December, 1908; and so the said Pete Dickerson did then and there commit wilful and corrupt perjury; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

The information charges the defendant with having on a day and year named upon an an issue duly joined wilfully and corruptly given false testimony in a matter material to such issue during his trial in the District Court of Laramie County upon a charge of rape, the said court having jurisdiction to try such issue. We do not think it necessary under our statute to set out all or part of the testimony to show the connection and thus disclose the materiality of the alleged false testimony. In enumerating the requirements of an information or indictment for perjury it is provided by Sec. 6176 that "it shall be sufficient to set forth the substance of the offense charged upon the defendant." Under similar statutes a general averment

of the materiality of the alleged false testimony is generally held sufficient.   (Sec. 878, McClain Cr. Law;  Sec. 921, Bish. N. Cr. Proc.)

It is further urged that the information fails to state the date of the alleged rape.  That date was alleged in the information which was filed in the rape case and upon the trial of which the defendant is alleged to have committed the perjury.  It was therefore a matter of record and under Section 6176, *supra,* it was not necessary to plead it.  The information complies with the provisions of the statute.  The defendant was fully informed of the nature of the charge against him and his contention to the contrary is without merit.

2.   The demurrer to the information was properly overruled.  It rests upon the same ground as the motion to quash, which motion as already stated was properly denied.

3.   A plea in bar tenders the issue of former acquittal, conviction or pardon for the identical offense charged. (Sec. 6195, Comp. Laws.)   The plea in this case set up the fact that the defendant had been charged, tried and acquitted of the crime of rape in the District Court of Laramie County on the 18th day of December, 1908, by a jury duly impaneled and sworn to try the issue joined. The offense of which he was acquitted was rape, whereas he is here charged with the crime of perjury.  The plea was, therefore, insufficient and should have been met with a demurrer, but, even so, the striking of the plea as frivolous though error was harmless.

4.   It is urged that the court erred in admitting in evidence the court files in the rape case.  As this was not made a ground in the motion for a new trial it is not before this court and need not be considered.

5.   T. Paul Wilcox, the official court reporter who reported the evidence in the rape case, was called as a witness and testified on behalf of the state.  He was permitted without objection as to correctness of a transcript of his stenographic notes to read therefrom so much of the evi-

dence of the defendant given by him upon his said trial for rape as set forth the alleged false testimony. Then for the purpose of showing the materiality of his evidence in that case the state offered proof of part of the evidence of the prosecutrix and also a part of the testimony of Dr. Johnston given upon that trial as to her physical condition shortly after the date of the alleged rape. No objection was made as to the correctness of the transcript from which the stenographer refreshed his memory as to what these witnesses testified to. This testimony was addressed to the court upon the question of the materiality of the alleged false testimony and was received in the presence of the jury over the objection of the defendant. The court refused defendant's request to instruct the jury limiting the effect of this evidence to the purpose for which it was offered. There is no dispute in the record that the alleged false testimony was in substance given by the defendant. It does not, however, appear upon the face of the information how it was material to the issue upon defendant's trial for rape, except by a general allegation that it was material to the issue. Under such allegation the materiality of that evidence was a matter of proof and the evidence of the prosecutrix and Doctor Johnston upon the former trial was offered and tended to show its materiality, although their testimony was not all that bore upon that question in the record before us. We think the court erred in permitting this testimony to be read in the presence of the jury. The prosecutrix's testimony went into detail of the surroundings, the alleged assault, her resistance, and the carnal knowledge of her by force and without her consent by the defendant. That she was two miles from her nearest neighbor, a mile and a half from a traveled road, in a lonely cabin with no one to defend or protect her; that he rode up to the cabin, dismounted, entered her cabin, solicited her and upon her refusal assaulted her and did have carnal knowledge of her by force and infected her with a venereal disease. That it was late

in the evening and after he had accomplished his purpose
she begged him to leave her and that he mounted his horse
and rode away. The next day she left the ranch and went
to the nearest town, too humiliated to complain. In a few
days the infection became apparent, the pain excruciating,
and she consulted a physician, who informed her of her
condition. The physician so consulted being about to depart
for Europe turned her over to Dr. Johnston for further
treatment. The latter's testimony went to her condition
when she became his patient, and was to the effect that
she was suffering from a recent infection of gonorrhea.
It was sought to show in defendant's trial upon the charge
of rape that he was suffering from such venereal disease
at the time of the alleged rape and thus connect him with
the perpetration of that crime. His defense was an alibi.
This evidence was competent upon the question of the
materiality of defendant's evidence upon which the perjury
is assigned, but only as inducement. It was not competent
for the purpose of proving the perjury. (Sec. 602a, Whar-
ton's Cr. Ev.) There was no dispute as to whether either
of these witnesses testified or as to the correctness of their
testimony as set forth in the transcript from which the wit-
ness refreshed his memory. Upon this state of the evi-
dence the question of materiality became one of law and
for the court. (Sec. 935, Bish. New Cr. Pr.; Sec. 866,
McClain's Cr. Law.) While in our judgment it was error
to permit this testimony to be read in the presence of the
jury in the absence of an instruction limiting its effect, it
does not follow that the defendant was thereby prejudiced.
Our attention is called to other parts of the bill of ex-
ceptions and to the evidence of both the prosecutrix and
Doctor Johnston, who were both sworn and testified as
witnesses on behalf of the state in the case here presented.
A comparison of their testimony given upon the trial of
defendant upon the charge of rape and read by the ste-
nographer from his transcript with their testimony as given
from the witness stand in this case, shows no material dif-

ference. It is in substance the same. The state did not
nor could it seek a conviction of the defendant of the crime
of perjury upon the evidence given by these witnesses upon
another and different trial, but it could do so upon the
oral testimony of the same witnesses to the same facts upon
the issue of perjury in this case if the evidence was other-
wise sufficient.

Upon the record here presented the instructions which
were requested by the defendant upon this phase of the
case properly stated the law and could properly have been
given. However, the law is where the jury could not have
been misled or when a fair inference may be drawn from
the record that no prejudice has resulted to the accused
the judgment should not be reversed. Had the oral evi-
dence of these witnesses or either of them been materially
different from that given upon defendant's former trial on
the charge of rape, or had they or either of them not been
called as witnesses in this case it would have raised a ques-
tion not presented by the record. We are of the opinion
that upon the record here presented neither the proof nor
reception in the presence of the jury of the evidence given
by them upon the trial of the rape case nor the failure to
give the requested instruction constituted prejudicial error.

5. The court refused to strike out the evidence of each
of the witnesses, Kelley, Fitzsimmons, Drake and Smith,
who testified as witnesses on behalf of the state. The mo-
tions were several and the rulings are separately assigned
as error, but for convenience the assignments may be con-
sidered together. Their evidence tended to show that they
were inmates of the Laramie County jail at the time de-
fendant was confined therein awaiting his trial upon the
charge of rape, Kelly on and after November 7, and the
last three being inmates at the time defendant was arrested,
on or about September 10, 1908, continuously to the time
of his release upon the verdict returned upon his trial in
the rape case. The evidence of Fitzsimmons, Drake and
Smith tended to show that the defendant was diseased with

and doctoring himself for gonorrhea during the entire time of such confinement. Kelly testified as to what he observed as to defendant's physical condition and of two conversations he had with the defendant, in one of which the defendant asked him, if called as a witness, to swear to certain things which would be material to his defense. The evidence as to the other conversation tended to show an admission by the defendant that he was diseased with gonorrhea two years prior to that time. In so far as the ruling with reference to the evidence given by the witness, Kelley, is concerned, there is no question as to its correctness. Admissions against interest or actions indicative of guilt are always competent as evidence against a party accused of crime. The admission of the defendant that he was diseased at a former time does not harmonize with his evidence given upon his trial for rape and tended to prove the falsity of that evidence. It was clearly competent, for if the admission was true it follows as a corollary that his evidence was false.

The evidence of Fitzsimmons, Drake and Smith tended to show that the defendant was diseased with and doctoring himself for gonorrhea during all the time they were confined in jail with him. Their evidence referred to defendant's condition of health after August 7, 1908, the date of the alleged rape. It will be remembered that there was evidence tending to show that defendant was so diseased prior to and at the time of the assault, and that being so, evidence of defendant's condition of health within a reasonable time subsequent to the assault was, we think, circumstantial evidence relevant to the issue as to whether he was so diseased at the time of the alleged assault. As to what would be a reasonable time within which the subsequent condition of health would be permitted to be shown rested largely in the discretion of the court. The assault is alleged to have occurred on August 7, 1908, and the defendant was not confined in jail until September 10th, following. It is true that he might have been infected subsequently to the

time the assault is alleged to have taken place and prior to his confinement in the jail, but that was a matter for the jury to determine in view of all the evidence. The view here expressed is analagous to the rule applied in cases where the mental capacity of a person is drawn in question and it becomes necessary to know or determine his or her condition of health at a particular time. In such cases evidence of the prior or subsequent condition within reasonable limits is relevant. (Secs. 225, 233, Wigmore on Evidence.) Upon principle we can see no reason why the rule should not be applied in a case like the one before us upon the exercise of a wise discretion of the trial court with reference to the time when such subsequent condition of health may be shown, there being evidence tending to show a prior diseased condition of the kind here referred to, leaving to the jury to determine from all the evidence the condition of health at an intervening time. We are of the opinion that the court did not err in the exercise of its discretion in refusing to strike out the evidence of these witnesses and in permitting it to go to the jury.

6. The defendant requested the court to instruct the jury as follows: "You are hereby instructed that the defendant, Pete Dickerson, is charged with feloniously, knowingly, wilfully and corruptly and falsely testifying under oath on said 17th day of December, 1908, that he, the said Dickerson, was not at any time, during the month of August, 1908, diseased with gonorrhea, and that he had never to his knowledge been diseased with gonorrhea, and before you can convict the defendant, under the information in this case, you must find beyond a reasonable doubt that the said Pete Dickerson was afflicted with said disease in the month of August, 1908, and that he had been at some other time during his life, and to his knowledge, afflicted with said disease, and unless you find beyond a reasonable doubt that he was so diseased, at some time during his life, and that he was also afflicted with such disease in August, 1908, your verdict must be for the defendant." Over the ob-

jection of the defendant the court modified and gave the
instruction as follows:

"You are hereby instructed that the defendant, Pete
Dickerson, is charged with feloniously, knowingly, wilfully,
corruptly and falsely testifying under oath on said 17th
day of December, 1908, that he, the said Dickerson, was
not at any time, during the month of August, 1908, dis-
eased with gonorrhea, and that he had never to his knowl-
edge been diseased 'with gonorrhea and before you can
convict the defendant under the information in this case
you must find beyond a reasonable doubt that the said Pete
Dickerson was afflicted with said disease, in the month of
August, 1908, or that he has been at some other time during
his life, and to his knowledge afflicted with said disease, and
unless you find beyond a reasonable doubt that he was so
diseased at some time during his life, or had such disease
in August, 1908, your verdict must be for the defendant."

To the modification of the instruction as originally re-
quested and giving the instruction as modified, the de-
fendant objected and excepted. This action of the court is
assigned as error. It is urged that in order to convict, the
jury should have been told that they must find from the
evidence that the defendant was diseased in August, 1908,
and that although he may have been diseased prior thereto,
yet that was not sufficient, and that the use of the words
"that he was so diseased at some time during his life or
had such disease in August, 1908," was misleading. As
already stated, it became material to show the condition
of defendant's health at the time of the alleged rape.
The evidence tended to show that the defendant was ar-
rested on the charge of rape in the early part of September
following the alleged assault. The evidence was conflict-
ing as to whether he had a venereal disease during his con-
finement in jail. Several witnesses who were inmates of the
jail at the time testified that he was doctoring himself for
gonorrhea and one testified that the defendant told him that
he had cured himself a year or two before in Arizona of

that disease by using a certain remedy. Dr. L. P. Desmond, a witness called in behalf of the defendant, testified that he doubted very much if a person once infected with that disease ever recovered. It will be remembered that the defendant testified under oath that he had never to his knowledge during his life time, been infected with that disease. It cannot be successfully contended that the condition of the defendant's health at the time of the alleged rape was not a proper subject of inquiry upon the trial of that charge and also in the case of perjury, record of the trial of which is here for review. The defendant's testimony that he had never been infected was a complete denial that he was so infected during the month of August, 1908, and was broader than the issue then raised in the evidence. It did more, it tendered the issue of purity throughout all his life, and the evidence of Dr. Desmond showed the materiality of the evidence of prior infection as bearing upon the condition of defendant's health at the time the State claimed that he infected the prosecutrix, and the evidence given by these witnesses tended to show the falsity of defendant's evidence upon which the perjury is assigned. In perjury it is not necessary that the alleged false testimony bear directly upon the issue. It is sufficient even though it be upon a collateral matter or constitute material circumstances legitimately tending to prove or disprove facts which are in issue or if it tend to strengthen or weaken the evidence in support of or against the issue upon the trial in which it was given. (Sections 1036, 1037, 2 Bish. New Cr. Law; Section 862, McClain Cr. Law.) The defendant's testimony legitimately tended to disprove a fact which was in issue. If he had never been diseased with gonorrhea then his evidence to that effect legitimately tended to prove that he was not so diseased at the time of the alleged rape. The information did not purport to give his alleged false testimony in *haec verba* but gives it in substance. That the word "and" was used in the information and the word "or" was used in the instruction complained of does not render the instruction,

though it might have been better worded, error of which the defendant can complain. While the word "or" was used in the disjunctive it referred to testimony upon which perjury could be assigned, and which testimony in substance was included in the assignment of perjury in the information. In other words, the alleged substance of the false testimony referred to the condition of the defendant's health at the time of the alleged rape, and also referred to his condition prior thereto. Proof of wilful and corrupt falsity of defendant's evidence as to his always having been free from such disease or that he was not so diseased during the month of August, 1908, would constitute a defense to the assignment as a whole and we are unable to perceive how the defendant could be prejudiced by instructing the jury that if they should find the testimony upon which the perjury is assigned as to either phase to have been wilfully, knowingly and corruptly false they should convict. The verdict is as follows: "We, the jury in the above entitled case, do find the defendant, Pete Dickerson, guilty of the crime of perjury, as charged in the information." From the language of the verdict in the absence of a contrary showing it must be presumed that the jury passed upon the assignment as a whole. The verdict upon its face was a finding upon the entire issue and we are unable to understand how the jury could upon the evidence admitted have found the defendant guilty except upon the assignment as a whole without violating their oaths. The defendant's evidence was to the effect that he had never been to his knowledge infected with gonorrhea. This included not only the month of August, 1908, but every month of his life prior and subsequent thereto, and if the State could show that he was so infected prior to that month and also within a reasonable time thereafter then this evidence had a material bearing upon the question as to whether he was suffering from such infection during that month and at the time of the alleged rape. The time when he became infected was not material except that it bore upon the question as to whether he was

so diseased at the time of the alleged assault on the prose-cutrix.

7. Dr. Shingle testified as a witness on behalf of the defendant to the effect that he assisted Dr. Kieffer either on September 20, 21 or 22, 1908, in making an examination of the defendant and certain tests to determine whether or not the defendant was then or could have been in the preced-ing August afflicted with gonorrhea. The defendant testi-fied that Dr. Kieffer made several examinations, and as, to how he was physically examined. These examinations were all made while the defendant was confined in, the Lara-mie County jail, and prior to his trial upon the charge of rape. Upon that trial Dr. Kieffer testified as a witness on behalf of the defendant. He departed this life on January 31, 1909. T. Paul Wilcox was recalled as a witness to testify in behalf of the defendant. After he retook the witness stand the following questions were asked and pro-ceedings were had, viz:

Q. You are the same T. Paul Wilcox who testified on behalf of the plaintiff in this case?

A. Yes, sir.

Q. And you took down in shorthand all the testimony that was given on the stand by witnesses in the case of the State of Wyoming v. Pete Dickerson, in which Pete Dicker-son was charged with rape?

A. Yes, sir.

Q. You may state whether or not Dr. Kieffer was a wit-ness on the trial of that case?

A. He was.

Q. Have you a transcript of his testimony?

A. Yes, sir.

Q. Will you turn to it, please, and—have you transcribed your shorthand notes of the testimony of Dr. Charles F. Kieffer?

A. Yes, sir.

Q. And is that the transcript you have before you?

A. Yes, sir.

Q. Is that a correct transcript of the testimony given on the trial of that case, by Dr. Kieffer?

A. Yes, sir.

Q. And all of it, is it?

A. Yes, sir.

Q. Does this transcript also include the evidence given by Dr. Kieffer on cross-examination?

A. Yes, sir.

Q. He was cross-examined by counsel for the State in that case, was he?

A. Yes, sir.

By Mr. Kinkead: Now, if the Court please, we offer the transcript of the evidence of Dr. Charles F. Kieffer, a witness in the case of the State of Wyoming v. Pete Dickerson, in which said Pete Dickerson was on trial in this court on the charge of rape under an indictment charging him with rape, the said Charles F. Kieffer, whose testimony is now offered, being the same Charles F. Kieffer whom the witness Dr. Delroy Shingle testified as being dead.

By Mr. Ross: That is objected to as incompetent, immaterial and irrelevant. The evidence offered in testimony was evidence taken in another case in which the defendant was charged with the crime of rape, and for the further reason that the witness cannot be cross-examined by counsel for the State in this case and we have a right to cross-examine the witnesses who testify on the part of the defense.

By Mr. Kinkead: We submit that this witness has been cross-examined on behalf of the State on the very questions now at issue in this case.

By the Court: I would like to hear the testimony of Dr. Kieffer, if there is any rule of evidence by which it is competent.

By Mr. Kinkead: Dr. Kieffer is dead.

By the Court: I know, and I don't know how you are going to get a dead man's testimony, or how you are going to cross-examine him.

By Mr. Kinkead: We can present authorities in the morning that we think sustain our right to show the admissibility of this testimony.

By the Court: You couldn't convince me with authorities. This is not a new matter; I have had it before. It has been held in some cases, such, for instance, as murder, where the witness was the only witness, and then only on certain facts, that such evidence might be produced by reading certain extracts only on certain things, and here you have the testimony of one witness on the same thing.

By Mr. Kinkead: If the Court please, I desire to make my offer more complete and make the record more complete. I desire to state that the purpose of this offer is to show that——

By the Court: You needn't state that in the presence of the jury. Write it out and hand it to the stenographer, so as to make the record correct.

By Mr. Kinkead: Exception.

In accordance with the direction of the court the offer was written out and filed with the stenographer.

The exception as shown by the part of the record above set out does not go further than the refusal of the court to permit the offer to be made in the presence of the jury, and the direction of the court to write out the offer and hand it to the stenographer. The preceding colloquy between court and counsel may indicate what the court's ruling would be upon an offer to prove certain facts by the former testimony of the deceased witness. It was not, however, a ruling upon such offer nor does the record show that after complying with the direction of the court by writing out his offer and handing it to the stenographer he presented it to or invoked a ruling of the court or that there was any ruling thereon.

8. The defendant assigns as error the giving of instruction No. 3. A reference to the motion for a new trial shows that this instruction was not mentioned except as follows in any of the grounds upon which a new trial was

asked, viz: "The court erred in giving to the jury instructions Nos. 1 to 8 inclusive, asked by the plaintiff, and in giving said instructions to the jury, exception to the giving of said instructions and each of them were duly taken by the defendant." The error here alleged goes to these instructions as a whole. The rule is well settled that it is incumbent upon the complaining party to point out with definiteness and particularity the error of which he complains, so that the trial court may pass upon the exact question which may thereafter be presented for review. It will be observed that the assignment is not that the court erred in giving each of the instructions, but the assignment was directed to the entire group designated, and that was the question presented to the trial court in the motion. Such being the case the universal rule is that the assignment can not be sustained if any one of the group is correct. (29 Cyc. 950; 14 Ency. P. & P., 893.) Some of the group are not otherwise complained of, and that being the case we might well assume that those not complained of correctly stated the law, but we need not rest our decision on that assumption alone, but upon our knowledge from an examination of the record that nearly all the instructions contained in this group complained of correctly state the law; and that fact alone is sufficient to withstand the assignment which is directed to the giving of them *en masse*. Such being the law, the correctness or incorrectness of this instruction is not properly presented by the record.

We discover no prejudicial error in the record and the judgment will be affirmed.                        *Affirmed.*

POTTER, C. J., and BEARD, J., concur.

### ON PETITION FOR REHEARING.

POTTER, JUSTICE.

The plaintiff in error has filed a petition for rehearing in this case. In the fourth paragraph of the original opinion it was said as to the contention that the trial court erred in admitting the files in the case in which the perjury was

alleged to have been committed, that it was not made ground in the motion for new trial and need not be considered. It is now contended that this was erroneous for the reason that it was included in the motion for new trial by the general specification: "Errors of law occurring at the trial of said cause and to which said errors of law and rulings of said court the defendant at the time duly excepted." It has been uniformly held by this court that such a specification is too general and indefinite to show that the question was brought directly to the attention of the court below. (Boburg v. Prahl, 3 Wyo. 325; C., B. & Q. R. R. Co. v. Morris, 16 Wyo. 308.) The papers were introduced for the purpose, no doubt, of showing the regularity of the proceedings in the case wherein it was charged that the perjury had been committed. No objection was offered to the information and verdict, the objection going only to the other papers. The argument in support of this exception was based mainly upon the admission of the instructions in the former case. While it appears that the instructions were among the papers identified for the purpose of the offer, they are not in this record, and it is therefore to be assumed that the offer as to them was abandoned. All of such files that we find in the record here are the information, a demurrer, a stipulation as to the use by either party of evidence given before the examing magistrate, the particulars of such evidence not being stated therein, and several subpoenas for witnesses, with the precipe therefor respectively. The journal entries were introduced without objection, and one of such entries shows the verdict. It does not appear that any of the papers so offered were read in evidence. In People v. Macard, 109 Mich 623, disposing of a like objection, the court say: "These papers were not read in evidence, and appear to have been offered for the sole purpose of showing the regularity of the proceedings in that (the former) case. Comment is unnecessary." We make the above statement as to the offer and objection merely to explain the situation,

and the improbability that any prejudice to the plaintiff in error could have resulted from the admission of the papers covered by the objection. But we adhere to our former conclusion that the matter is not properly here for consideration.

It is strongly urged that there should be a rehearing for the purpose of a re-examination of the objection to the admission in evidence of certain testimony given upon the trial of the defendant wherein the perjury is alleged to have been committed. That testimony was offered and admitted for the purpose of showing the materiality of the alleged false statements of the defendant, and we held that the error in admitting it without an instruction properly limiting its effect was not prejudicial for the reason that the same witnesses testified in the present case to substantially the same facts. It is earnestly contended that in so holding this court erred, and it is urged that the testimony could have served no other purpose than to inflame the minds of the jury to a point where their reason would become practically dethroned, and passion, hatred, ill-will and prejudice would control their deliberations, as a result of the recital of the facts of the assault claimed by the prosecutrix to have been perpetrated upon her by the defendant. Counsel say in the present brief: "The fact that defendant's counsel was protesting before the jury rightfully against the introduction of this incompetent testimony, and the fact that he was insisting that proper insructions should be given the jury as to the plain, legal and just rights to which the defendant was entitled, and the jury being permitted to constantly observe counsel's repeated defeats at the hands of the court, amounted to nothing less than a statement by the court to the jury that the positions of the plaintiff in error and his counsel were wrong, and they were therefore at liberty to draw any inference or conclusion from the testimony that they saw fit, no matter how detrimental or unjust or prejudicial it might be to the defendant. It was equivalent to a statement to the jury

that the charges made against the plaintiff in error were true, or he would have denied them, and being true he ought to have been convicted of rape, and if not of rape, then of perjury." And counsel refer us to the principle that a presumption of prejudice arises from the admission of irrelevant or illegal evidence, citing 12 Cyc. 912, and other authorities, and particularly urge as the correct rule a statement found in the opinion in the case of People v. Smith, 172 N. Y. 210, to the effect that the burden of showing that the illegal and improper evidence which was received was harmful is not upon the appellant but that it was harmless and could by no possibility have prejudiced him must be established by the other party (the State). Counsel also cite Kirby v. People, 123 Ill. 436, 15 N. E. 33, and quote therefrom with other parts of the opinion the following: "The rule is not as quoted by the State's attorney, that it is only 'when the court can see that the admission of improper evidence or the exclusion of proper evidence has worked an injury to the party complaining, that the judgment will be reversed,' but it is that the court will not affirm where error has intervened, unless it shall appear from the whole record that such error could not reasonably have affected the result. When there is error it is presumed to have improperly affected the result; but this presumption is rebutted where, from the whole record, it is manifest that no improper result to the party complaining could reasonably have followed."

Counsel seem to assume that we held the evidence given upon the former trial, the part which was offered and admitted in this case, to be incompetent, and that it was error to permit it to be read in the presence of the jury; and there is a statement in the former opinion from which that might perhaps be inferred unless taken in connection with other statements following it. It was said that the evidence was competent upon the question of the materiality of defendant's evidence upon which the perjury is assigned, but was not competent for the purpose of proving the perjury,

and that it was error to permit such evidence to be read in
the presence of the jury in the absence of an instruction
limiting its effect. The form in which the proposition was
stated leaves it open to misconstruction, for we do not think
that the error consisted in admitting the evidence for the
purpose for which it was offered, or in permitting it to be
read in the presence of the jury, but in failing to properly
instruct the jury either at the time it was received or later
in the trial as to the purpose and effect of such evidence and
the consideration to be given it by the jury. (State v.
Brown, 111 La. 170; People v. Macard, 109 Mich. 623;
State v. Vandemark, 77 Conn. 201; 2 Bishop's New Cr.
Proc., Sec. 935; 9 Ency. of Ev. 756-759.)   Mr. Bishop in
his work above cited says that where the indictment does not
set out the facts whence the materiality judicially appears,
"the course is to prove all or so much less than all of the
pleadings and evidence brought forward at the former trial
as will duly present the question, whereupon the court, not
the jury, will decide, as of law, whether or not what the de-
fendant is shown to have testified to therein was material.
Yet practically, as fact is involved with the law, the ques-
tion must generally be passed on with the rest by the jury
under instructions from the court." While the materiality
of the testimony on which perjury is assigned is a question
of law for the court, it may become a mixed question of
law and fact in which case the court should submit it to
the jury with proper instructions. (9 Ency. of Ev. 756;
Young v. People, 134 Ill. 37; McAvoy v. State, 39 Tex.
Cr. 684; Washington v. State, 23 Tex. App. 336.) Judge
Henderson, who delivered the opinion in the Texas case of
McAvoy v. State, *supra,* states the rule in his dissenting
opinion in Freeman v. State, 43 Tex. Cr. 580, as follows:
"The question as to the materiality of the alleged false
testimony is for the court; but this may become a mixed
question of law and fact, and may properly be submitted
to the jury; the court informing the jury that, if they
find certain facts to be true, then the alleged false testi-

mony became material. Ordinarily, the question of materiality is not complicated; but merely on introducing the indictment and plea the materiality of the alleged false testimony becomes obvious. * * * But if the alleged false testimony bears not immediately on the issue, but upon some collateral issue, which in its turn becomes material as illustrating or bearing on the main issue, then the materiality of the testimony may become more complicated, and enough of the proceedings transpiring in the lower court should be shown in order to establish the materiality of the alleged false testimony to the issue then being tried. * * * * Bearing in mind that the sole question here is as to the materiality of the alleged false testimony, the fact then to be proved is, how it became material; and the solution of this question can be arrived at solely from the pleadings and evidence delivered on the trial, and bearing on that issue. Of course only so much of the evidence as tends to prove the issue should be admitted."

It may be conceded that the testimony shown to have been given by the prosecutrix in the rape case and her physician, which was admitted to show the materiality in that case of the testimony of defendant upon which the charge of perjury was based, would be prejudicial to the defendant, without a proper instruction as to the purpose for which it might be considered, had the same witnesses not been sworn in the present case and had they not testified to the same facts. But they were sworn and did testify to substantially the same facts in this case, and what is perhaps more significant the details of the assault upon the prosecutrix in the rape case were brought out in her testimony given by her in the present case on persistent cross-examination by defendant's counsel. As it covered practically the entire ground of that part of her former testimony which had been admitted to show materiality, and did not vary therefrom, if such facts would have the effect upon the minds of the jury as stated by counsel, the verbal testimony of the prosecutrix on the trial of the

present case would more likely have that effect than the mere reading from the transcript of her former testimony by the stenographer. We cannot believe, therefore, that the error in not limiting by instructions the consideration to be given the former testimony could have affected the result prejudicially to the defendant. On the contrary,. we think it clearly appears that no improper result could reasonably have followed from the error with reference to that testimony; and this equally applies to the former testimony of Dr. Johnston. While it is true that there was. no instruction definitely restricting the jury in their consideration of the evidence given on the former trial of defendant, it appears that in the colloquy between the court and counsel when it was offered it was stated that it was. offered and admitted for the purpose of showing the materiality of the alleged false testimony of the defendant on that trial. We do not hold that this was equivalent to a definite explanation or instruction to the jury. But we adhere to the conclusion that the error above discussed was. not prejudicial.

The exception to instruction No. 3 requested by the prosecution was disposed of in our former opinion upon the principle that as that instruction was not mentioned in the motion for a new trial except as one of a group of instructions excepted to, and as the others, or, as stated in the opinion, "nearly all the instructions contained in this group complained of correctly state the law," the correctness or incorrectness of the third instruction is not properly presented by the record. The instruction thus complained of defined "reasonable doubt." Our attention is called to the rule followed by this court in Palmer v. State, 9 Wyo. 49, viz: that where the instructions for the State present as a. whole an erroneous view of the law as applied to the facts of the case on trial a general objection to such instructions. is sufficient. We do not think that rule applicable to the case at bar.

We have carefully considered the able brief filed in support of the petition for rehearing upon the other points.

discussed in the former opinion, but remain satisfied with the conclusions and the reasons therefor as expressed in that opinion, and we are not convinced that there is any good reason for granting a rehearing. With reference to the testimony of the deceased witness, Dr. Kieffer, given upon the former trial of defendant, it may be said that if the action or remarks of the court deprived the defendant of the benefit of that testimony it does not appear to have been so injurious as counsel seem to think, for Dr. Shingle, who was present at the examination of the defendant by Dr. Kieffer and assisted in making the tests, testified in such a manner as to place before the jury the fact that neither Dr. Kieffer nor himself found any germs of the disease in question, and the only substantial matter in the testimony of the deceased witness, as shown by the offer thereof, of which the defendant was deprived was the opinion of that witness as to the probabilities of the defendant having had the disease at the time of the assault claimed to have been made upon the prosecutrix in the rape case; and as to that the defendant had the benefit of the testimony of Drs. Shingle and Desmond, who were produced as witnesses in his behalf. But we do not decide the question as to the admissibility of Dr. Kieffer's testimony, for the reason that, in our opinion, the record fails to show that any ruling was made or invoked upon a proper offer of such testimony. Rehearing will be denied.

BEARD, C. J., and SCOTT, J., concur.