## WILDE v. STATE.
### (No. 675.)

CRIMINAL LAW — PERJURY — INFORMATION — MATERIALITY OF FALSE
TESTIMONY—WITNESSES—IMPEACHMENT — EVIDENCE — COLLATERAL
MATTERS—REPUTATION—INSTRUCTIONS.

1. Where an information charging perjury alleged that the al-
   leged false testimony was material to an issue duly joined
   and on trial in a certain named case before a jury, without
   alleging any evidence given upon that trial showing the
   materiality of the alleged false testimony, the materiality of
   such testimony was a matter of proof on the trial for per-
   jury.

2. Where, on a trial for perjury based on alleged false testimony
   of the accused in support of an alibi on his trial for a
   crime charged to have been committed December 26th, the
   state claimed that certain work performed by accused and
   his partner was begun December 30th, while accused claimed
   that it was begun December 23rd, that he was injured two
   days later, and was not at the place of the commission of
   the alleged crime. *Held,* that a witness for accused who
   testified that a few days before Christmas he hired a horse
   to accused for use in the work, could not be impeached by
   entries in a book made by a partner of the witness showing
   the date the horse was hired, in the absence of proof rend-
   ering the entries admissible in evidence by showing that
   the time of the entries corresponded with the occurrence,
   that the entries were correctly made, and that the witness
   was bound thereby.

3. On such perjury trial the testimony of a hardware merchant
   that he sold accused and his partner on December 19th and
   23rd tools for use for the work which they claimed was
   begun on December 23rd was competent on the question as
   to when the work was begun, but it was not competent for
   the accused to show the statement made by his partner at
   the time the tools were purchased on December 19th that
   they would begin work immediately.

4. On such trial for perjury, the issue was whether certain
   work done by the accused was begun on December 23rd or
   on December 30th, and a witness testified that he was em-
   ployed on the work, and that it was begun on December
   30th, and that he knew the day because he had hauled some
   lumber on preceding days, and paid for the lumber when

he got it, but did not testify that he was present at the lumber yard on December 23rd. *Held,* that evidence of payment on December 23rd for the lumber on behalf of the witness, the witness not having been at the lumber yard on that day, was properly excluded, because merely collateral.

5. On a trial for perjury the accused being named "Anthony Wilde," and there being nothing to show that he was ever known as or called "Joe Wilde," a question on cross-examination propounded to a witness who had testified as to the bad reputation of certain witnesses for the prosecution, how much he owed "Joe Wilde" was improper.

6. It is necessary on a trial for perjury for the prosecution to show that the alleged false testimony was in fact given at the time and place alleged upon an issue joined and upon a matter material to such issue.

7. On a trial for perjury based on alleged false testimony of the accused in support of his defense of alibi on his trial for a felonious assault charged to have been committed December 26th, it was shown that the accused on the assault trial testified that on December 25th he was seriously injured, and that he went to a town about 1½ miles from the place of the alleged assault, and remained in that town the next day. *Held,* that the materiality of the alleged false testimony was sufficiently shown, and that it was not necessary on the question of such materiality for the state to prove that the accused was at the place of the commission of the alleged assault at the time when it was charged to have been committed.

8. On a trail for perjury based upon alleged false testimony given on a criminal trial in the district court before a jury, the information alleging that such testimony was given on the trial of an issue duly joined, and the accused having pleaded not guilty, it was necessary for the state to prove that the trial in which the alleged testimony was given was had upon issue joined, and there being no proof of issue joined in the former trial the charge of perjury was not established.

9. Although an information charging perjury did not purport to set forth the evidence given upon the trial of the case in which the alleged false testimony was given to show the materiality of that testimony, but it did allege that such testimony was given upon a matter material to the issue in that case, it was sufficient under section 6176, Compiled Statutes, 1910, and a requested instruction that the informa-

tion did not properly charge the crime of perjury was prop-
erly refused.

[Decided April 25, 1912.]                    (123 Pac. 85.)

ERROR to the District Court, Laramie County; HON.
CHARLES E. CARPENTER, Judge.

Anthony Wilde was charged with and convicted of the
crime of perjury, the charge of perjury being based upon
alleged false testimony given upon a trial of the accused for
an alleged felonious assault upon one Bernice Wells with an
intent to commit rape. The other material facts are stated
in the opinion.

*William B. Ross,* for plaintiff in error.

The same points were made in the brief as in the case of
Fletcher v. State, it being contended that the legal proposi-
tions referred to in the Fletcher case were applicable to
this case. In addition thereto counsel for plaintiff in error
contended that error was committed in excluding the testi-
mony of one Crawford with reference to the sale of certain
ice tools to Fletcher and Wilde on December 19th, and the
testimony of one Koch to prove the payment of a lumber
bill by one Bright, the latter having testified that he had
bought lumber of Koch on a certain date. Also that the
testimony of other witnesses was improperly excluded, and
that of certain witnesses for the prosecution improperly ad-
mitted. It was also contended that the court improperly
refused to instruct the jury that the information failed to
charge the crime of perjury under the laws of this state,
and that a verdict of not guilty should be returned.

The following legal propositions were also urged: A
litigant's position on the trial cannot be shifted on appeal.
(Elliott's App. Proc. secs. 489-498; 2 Cyc., 670-676;
Blanchard &c. Co. v. Colvin, (Ind.) 69 N. E. 1032; Calla-
way v. Mellett, (Ind.) 44 N. E. 198; Sanders v. Stimson,
(Wash.) 75 Pac. 974; Descher v. R. Co., (Mo.) 98 S. W.
737; Berry v. People, (Ill.) 66 N. E. 1072; R. Co. v. Wood,
(Ind.) 14 N. E. 572; In re Atwood, 38 N. Y. Supp. 338;

Chicago v. Wildman, (Ill.) 88 N. E. 559; Donaldson v. State, (Ind.) 78 N. E. 182; Earl Fruit Co. v. Thurston C. & W. Co., (Minn.) 62 N. W. 439.) The record and judgment in the former case wherein the alleged perjury was alleged to have been committed and the evidence of the alleged false testimony were admissible on this perjury trial only as matter of inducement to show the proceeding in which the alleged perjury was committed, the regularity of such proceeding, and the jurisdiction of the court; it could not be considered as proof of the perjury. The failure to show that Wilde was at the place of the alleged assault on December 26th or 27th was a fatal defect of proof in the perjury case. It is necessary on a trial for perjury to show by satisfactory evidence that the alleged false testimony was material, and by a reasonable doubt that it was false. (30 Cyc., 1446, 1417-1418, 1421; 2 Whart. Cr. Law, sec. 1325; Dickerson v. State, (Wyo.) 111 Pac. 857; Reavis v. State, 6 Wyo. 240; State v. J. B. 1 Tyler, 269; State v. Lawson, (N. C.) 4 S. E. 134; State v. Vandemark, (Conn.) 58 Atl. 715; Ex parte Meyer, (Cal.) 40 Pac. 953; Liggett v. State, (Tex.) 83 S. W. 807. Citing also several cases cited in the brief in the case of Fletcher v. State.)

*D. A. Preston,* Attorney General, and *Charles L. Rigdon,* County and Prosecuting Attorney of Laramie County, for the state.

In addition to the points made in the brief for the state in the case of Fletcher v. State it was contended that no error was committed in respect to any of the matters objected to by counsel for plaintiff in error.

Scott, Justice.

The plaintiff in error (defendant below) was charged, tried, found guilty and judgment pronounced against him for the crime of perjury. He brings the case here on error.

1. The facts in this case with a few exceptions, and the assignments of error are essentially the same as those in Fletcher v. State, No. 674, 123 Pac. 80, this day decided.

The information charged that the evidence upon which the perjury is assigned was given upon the trial of State v. Wilde on December 21, 1908, in the District Court of Laramie County. In that case defendant was charged with felonious assault upon one Bernice Wells near Hartville, Laramie County, Wyoming. Upon the trial of that case the State fixed the time of the assault as the afternoon of the 26th of December, 1907, and in her cottage. The defense in that case was an alibi. The information here charges that "on an issue within the jurisdiction of said court duly joined and trial before a jury" * * * "it then and there became and was a question material to said issue whether the said Anthony Wilde with a crew or gang of men began and commenced putting up ice in the ice house of Chris Fletcher and Anthony Wilde on the 23rd day of December, 1907, and whether the said Anthony Wilde was present when said ice was being put up at said ice house on the 25th day of December, 1907, and whether the said Anthony Wilde was injured at said place on said 25th day of December, 1907, and to this the said Anthony Wilde did then and there feloniously, knowingly, wilfully, corruptly and falsely, upon his oath as aforesaid, swear, testify and say in substance and effect, that he (meaning the said Anthony Wilde) with a crew of men began putting up ice on the 23rd day of December, 1907, at said ice house, and that he (meaning the said Anthony Wilde) was present where said ice was being put up at said ice house on said 25th day of December, 1907; whereas in truth and in fact" &c. It will be observed that no evidence given upon that trial showing the materiality of the alleged false testimony is set out in the information, but it is alleged that it was material to an issue there duly joined and upon trial before a jury. In such case the materiality became and was a matter of proof. (Dickerson v. State, 18 Wyo. 440, 463, 111 Pac. 857, 116 Pac. 448.)

2. It was the theory of the prosecution that the work of putting up ice did not commence until December 30th. If that theory is correct then Wilde was not injured at the ice

house on December 25th, and was not thereby incapacitated from work or riding horseback on December 26th, 1907. On the other hand it was contended by the defense that the work of putting up the ice commenced on December 23rd and the injury was received on December 25th.

The witness Deercorn testified on behalf of the defense that a few days before Christmas he hired a horse to Wilde & Fletcher to be used by them in putting up ice. He was inquired of as to what if anything he said to Wilde at that time. An objection to this evidence was sustained, whereupon the following offer was made by the defendant, to-wit: "The defense offers to prove by this witness that at the time when they hired this horse in question, as testified to as having been hired by Fletcher & Wilde, that he notified them that he must have the horse back again by Christmas that year." The state objected to this evidence on the ground that it was incompetent, irrelevant and a self serving statement. The objection was sustained and exception was reserved. The witness also testified that he was a partner of one Testoline in the business of keeping a livery stable at Hartville. Upon inquiry by the State as to whether he reported to Testoline every day the business of that day he replied that he so reported sometimes every day and sometimes once in two or three days, and that Testoline kept an account of what he reported to him and that every time that Wilde and Fletcher got a horse he reported it to Testoline and that the latter put it down in his book. That he knew Testoline's handwriting and upon being handed a book said that it looked like his handwriting. The following questions were then asked and answers given, viz.:

Q. The 29th of December, isn't it (indicating item in book)?

A. Yes.

Q. He has got a horse there charged to Fletcher and Wilde, hasn't he, on the 29th?

A. If the book says so. I never had it in my head.

Q. Look the book through and see if that is the first time you find any entry with regard to a horse in that book? By General Donzelman (attorney for the defendant) : "I object to this kind of cross-examination. It is not proper cross-examination. By the Court: "The objection is over-ruled." To this ruling the defendant reserved an exception.

Q. When you come to the first date when a horse was charged to Fletcher and Wilde, call my attention to it. This is the first item (indicating item in book) when any horse is charged to Fletcher and Wilde?

A. Yes.

Q. What date is that according to the book?

A. The 29th.

Q. Of what month?

A. December.

Q. 1907?

A. Yes.

Q. All right, find the next one that is charged there what is this item?

A. The 30th."

We have given a part only of the cross-examination as to the contents of this book. Upon being interrogated by the defendant the witness testified that he didn't know whether the entries in the book were true or not and that it was not a partnership book. The defendant moved to strike out all the evidence of the witness relating to the data in the book. The motion was denied, to which the defendant excepted. The contents of the book were not admissible in evidence upon the showing here made. The time of the entries may or may not have corresponded with the times of the occurrences referred to therein, and no evidence was offered or introduced showing that such entries were correctly made, or, if so, that the witness was bound thereby. It was highly improper to introduce the contents of this book in the manner resorted to by the State, for in any view, upon the evidence adduced, its contents would be incompetent, for it would have no tendency to contradict or impeach the wit-

ness. If permitted it would require the weight to be given
to the evidence of the witness to depend on the contents of a
memorandum book kept by another person in the absence of
proof that the items were correctly made at the times of
such occurrences. Upon the evidence the witness may have
reported the hiring of the horse to Wilde and Fletcher be-
fore Christmas, and when reported it may not have been
entered at all, or it may have been incorrectly entered in the
memorandum book by Testoline. For these reasons the
court erred in permitting such cross-examination over ob-
jection and in denying defendant's motion to strike out the·
evidence.

3.  The defendant asked questions of the witness Craw-
ford, a hardware merchant of Guernsey, as to selling ice
tools to Fletcher & Wilde on December 19th and as to his
entries in his books as to this transaction. Objections were
made by the State to these questions and sustained by the·
court. Thereupon the defendant offered to prove the pur-
chase of these tools on December 19th and also that Fletcher
at the time was asked when they would begin to cut ice, to·
which Fletcher replied "Immediately" and in the same con-
nection it was offered to be shown that Fletcher & Wilde·
came to Crawford's store on the morning of December 23rd
and purchased two prod poles to be used in cutting ice at
that time. Upon objection this offer was rejected. (In
Fletcher v. State, 123 Pac. 80, this day decided, this evi-
dence was not objected to). The evidence as to the pur-
chase of the tools on December 19th and 23rd would not
have been a strong circumstance in the case, but we think it
was competent to go to the jury for what it was worth as
evidence of contemporaneous acts of the parties, though the
entire offer as made was objectionable. The question was
competent as tending to show a circumstance not too remote
but sufficiently close to be considered by the jury in con-
nection with other evidence in determining the question as
to when the cutting of ice commenced. As to what Fletcher
or either of them said as to when they were going to com-

mence cutting ice was not competent and could have no
bearing on fixing the exact day when the work commenced.
The cutting of the ice was not in dispute, but as to when the
work of cutting commenced was a material matter both in
the trial of the assault case and upon the issue here. In
view of the circumstances of this case we think it was error
to exclude the testimony to the extent indicated but we do
not think it was of such importance as alone to constitute
sufficient ground for reversal.

4. Obie Bright a witness on behalf of the State testified
that he was a member of the crew that put up ice for Wilde
& Fletcher that year and that they commenced work on De-
cember 30th. Upon being inquired of as to how he knew
this he stated in substance that the hauled lumber on De-
cember 18th and 19th and possibly a load on the 21st, then
quit hauling until the 27th or 28th and that he paid for the
lumber as he got it. One Koch was called as a witness on
behalf of the defendant who offered to prove by him that
he was paid $100 for lumber on behalf of the Brights on
December 23rd, at the town of Guernsey in his lumber yard
and that it was not Obie Bright who was there at the lum-
ber yard and paid him on that day. This offer was objected
to and the objection was sustained. As bearing upon this
offer it appears from the bill that A. J. Briggs, a witness for
the defendant, testified that he saw a gang of men at work
at the ice about nine o'clock on the morning of December
23, 1907. He was asked if he saw Old Man Bright pay
money to Henry Koch in Guernsey while he was there on
that day, he having testified that on that day he had gone
from his ranch past the ice house to Guernsey. The court
sustained the State's objection to this testimony. The prof-
fered evidence had reference to the question as to whether
Obie Bright was in Koch's lumber yard in Guernsey and
made payment on December 23rd. Obie Bright did not
testify that he was present at Koch's lumber yard in the
town of Guernsey on December 23rd, and it was wholly im-
material and collateral to any issue in this case whether he

paid for the lumber at the time he got it or not. The court committed no error in sustaining the objection to this evidence.

5. A witness Wright was called as a witness on behalf of the defense. He testified that he was acquainted with the reputation for truth and veracity of Stout and Stoneking in the neighborhood in which they lived and who had theretofore testified in behalf of the State and upon further inquiry he testified that such reputation was bad. We copy from the bill as follows:

"Cross-examination by Mr. Rigdon:

"Q. How much money do you owe Joe Wilde?"

By General Donzelman: "That is objected to, if your honor please."

By the Court: "He may answer." By General Donzelman: "Exceptions."

"A. I couldn't tell the exact amount, I owe him some; I couldn't tell without looking at the books." By General Donzelman: "The defense moves to strike out the answer as wholly immaterial." By the Court: "The motion is overruled." By General Donzelman: "Exceptions." The admission of this evidence was clearly erroneous. Joe Wilde was not a party to this case, nor was his connection if any with the defense shown. We can not understand why the court admitted this evidence except by oversight as to the given name of the defendant on trial. The defendant was prosecuted under the name of Anthony Wilde and it is nowhere suggested in the record that he was ever known or called Joe Wilde.

6. It is assigned as error that the evidence does not support the verdict. It was necessary in this case to show that the alleged false testimony was in fact given at the time and place upon an issue joined and upon a matter material to such issue. The evidence of the alleged false testimony and so much of the evidence given by Bernice Wells, the prosecutrix in the assault case, as was deemed advisable by the prosecution to show its materiality was introduced by the

State. The court treating the question as one of law held the evidence of Bernice Wells as shown by this transcript and upon which there was no dispute sufficient to show the materiality of the alleged false testimony. From the transcript of her evidence given in that case it appears that her evidence was confined to what transpired at and in her cottage and in the vicinity thereof on the 26th day of December, 1907. The defense in that case was an alibi and the perjury assigned in the information in the case here is predicated upon the evidence of Wilde as to his whereabouts and incidents of December 23rd and 25th, as testified to by him on the trial of the assault case. The materiality of the evidence in support of the alibi and upon which perjury is here assigned depends upon whether Wilde remained at Hartville on December 26th, by reason of an injury which he claimed to have received at or near the ice house on December 25th. The transcript of Wilde's testimony given in that case was to the effect that he commenced gathering ice on December 23rd. That on December 25th he was seriously injured at or near his ice house between 8 and 9 o'clock in the morning and the extent and nature of the injury, and that Fletcher took him to Hartville. His testimony in part was as follows: "When Fletcher came down * * * he stayed there a while and finally we started to go to Hartville, and I says, I will just tell Al Hauphoff, he was a kind of handyman, what to do. I don't expect to be able to come down tomorrow. So I left orders with Al Hauphoff when I went back to Hartville. The next day I laid around Hartville and on the 27th Fletcher took me down to the ice house." We think this evidence though not competent to show the falsity was sufficient to connect and show the materiality of the alleged false evidence in the cause in which it was given with the occurrences of December 26th. It must have conveyed to the minds of the jurors in that case the idea that Wilde laid around and was at Hartville on December 26th by reason of his injury on the day preceding, and his whereabouts on December 26th was material upon the question of

his guilt or innocence in that case. The purport of this evidence was that he was not on December 26th nearer the cottage of the prosecutrix than Hartville. The cottage was about 1½ miles from Hartville and in going from Hartville to and returning from the ice house he had to pass along the road upon which was the Wells cottage. There was no proof of arraignment and plea of Wilde to the charge of felonious assault. We think that had there been proof of issue joined in that case, but as shown hereafter there was no such proof, this evidence in connection with such proof would have been competent testimony on the question of the materiality of the alleged false testimony in the assault case.

In support of this assignment it is also contended that as the defense in the assault case was an alibi and there is no evidence in this case tending to show that Wilde was at the cottage of the prosecutrix at the time fixed in the evidence upon his trial when it is claimed that the felonious assault was committeed that the falsity of the alleged testimony is not here shown. It was not necessary for the State to prove that the defendant was at the cottage in order to show the falsity of the evidence upon which the perjury is assigned. It was only necessary to show that his presence at the cottage on December 26th was in issue upon the trial of the assault case. Had the issue in that case been proven here then if the defendant knowingly and wilfully swore falsely to a matter material to such issue he was guilty of perjury. The burden resting upon the State went no further. The question is identical with that discussed in the Fletcher case this day decided. The State here as there failed to introduce in evidence the record of the arraignment and plea of not guilty in the assault case. We need not discuss that question other than to say as in the Fletcher case that this was necessary to sustain a conviction as against this assignment of error. It was alleged in the information that the perjury was committed upon the trial of an issue duly joined. The plea of not guilty to the charge of perjury here required proof of such plea in the assault case to show that the al-

leged false testimony was given upon an issue in that case. If there was no issue proven then there was no perjury proven.

7.   It is urged that the court erred in refusing to give the following instruction to the jury which was requested by him, viz: "The court instructs the jury that the information in this case fails to charge the crime of perjury under the laws of the State of Wyoming, and you are instructed to bring in a verdict of not guilty." The information does not purport to set forth the evidence given upon the trial of the assault case to show the materiality of the testimony upon which the perjury is assigned. It is, however, alleged that such evidence was given upon a matter material to the issue in that case. This was sufficient under sec. 6176, Comp. Stat. The exact question was before this court in Dickerson v. State, supra, where we held contrary to plaintiff's contention here. The information does sufficiently charge the crime of perjury under our statute and the court committed no error in refusing to give this instruction.

For the errors above pointed out the judgment will be reversed and the case remanded for a new trial.

*Reversed.*

BEARD, C. J., and POTTER, J., concur.