Kenneth P. CLENIN, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4673.

Supreme Court of Wyoming.

Jan. 12, 1978.

Louis A. Mankus, (with him on the brief was Terri Lorenzon, Legal Intern), Cheyenne, for appellant.

V. Frank Mendicino, Atty. Gen., and Arthur T. Hanscum, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

The issue presented in this appeal arises out of interrogation of Clenin during cross-examination by the prosecutor concerning his failure to advise law enforcement officials, including the prosecutor, of his defense of alibi. Was that an impermissible comment on the exercise of his constitutionally protected right of silence? Clenin was convicted by the jury of delivering a controlled substance, amphetamine sulphate, to another in violation of § 35–347. 31(a)(ii), W.S., which prohibits the delivery of any controlled substance classified in Schedule I, II, or III in the statutes and sets the penalty at imprisonment for not more

than ten years and a fine of not more than $10,000 or both.[1] He appeals from the Judgment and Sentence of the District Court sentencing him to a term of not less than 18 months and not more than three years in the State Penitentiary. We conclude that the questioning was prejudicial and the error was both plain and fundamental. We must reverse Clenin's conviction.

The facts material to the resolution of the issue are not lengthy. The record includes a notation by the Justice of the Peace, who fulfilled the responsibilities of the commissioner under our Wyoming Rules of Criminal Procedure, that the defendant appeared before him on May 16, 1975, " * * * and he was advised of his constitutional rights." We presume that notation reflects that Clenin received the advice which the commissioner must furnish him under Rule 5(b), W.R.Cr.P.[2] Furthermore, upon the occasion of his arraignment in the district court the appellant along with others received the following advice from the judge:

"The first thing I need to advise you of is that as to the charge that is pending against each of you, each of you has a right to remain silent, to make no statement whatsoever. However, you should each be candid and open in your discussions with your attorney, and any discussion that you have with him is protected by a privilege and he cannot be compelled to release information that you may give to your attorney unless you authorize him to do so.

"You are under no obligation to furnish any information whatsoever to the Court or to any law enforcement officials or to others."

We point out the foregoing advice by judicial officers because in this instance the cross-examination covered not only a failure to tell law enforcement officers of his alibi, but a failure to advise the county attorney. The record in this respect reads as follows:

"Q. Now after you were arrested, of course then you told the—were you questioned at that time?

"A. No, sir, I was not.

"Q. And what police officers did you tell that you weren't there, that you were at this party?

"A. I did not tell the police officers a thing, sir.

"Q. You didn't tell anyone?

"A. On my lawyer's advice, I told no one, sir.

"Q. You mean this is the first time that you have told this to anyone besides your lawyer?

"A. No, sir, this isn't the first time. When I turned myself in, sir, I did not communicate with nobody, sir, except the lawyer who was present when I turned myself in.

"Q. Well, when you were arrested though, didn't you say, look it, this couldn't be me, I was at a party?

"A. No, sir, I didn't.

"Q. You didn't say that?

"A. No, sir, upon my lawyer's advice.

"Q. Did you ever notify my office and tell me that you were—

"A. No, sir. If left that up to my lawyer, sir.

"Q. Did any of your witnesses, so far as you know, ever tell the police or tell my office that you had an alibi, that you weren't there and couldn't have done this thing that you are accused of?

"MR. MANKUS: Your Honor, I am going to object to these questions,

---

1. Amphetamine sulphate is included in the statutory definitions of Schedule II Controlled Substances by § 35–347.16(d)(i), W.S.

2. Rule 5(b), W.R.Cr.P. provides as follows:

    "Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him and of any affidavit filed therewith, of his right to retain counsel, of his right to request the assignment of counsel if he is unable to obtain counsel, and of his right to consult counsel and to have a preliminary examination. *He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him.*" (Emphasis added)

they are argumentative and he doesn't know what someone else can call or do. He acted upon advice of counsel—and I wasn't attorney at the time either. I think he is just badgering this witness.

"THE COURT: Well, for not necessarily those grounds, but for the grounds that his right to remain silent is a right that cannot be inquired into, I will sustain the objection."

Clenin's contention in this case is the quoted questions during cross-examination violated his rights under the Fifth Amendment of the Constitution of the United States, as made applicable to the states pursuant to the Fourteenth Amendment, and under Art. 1, § 11 of the Constitution of the State of Wyoming. The basis for Clenin's claim is found in the case of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). This Court already has adopted and applied that rule in *Irvin v. State,* Wyo., 560 P.2d 372 (1977). While we noted in *Irvin v. State,* supra, that the County Attorney dwelled at length in his closing argument upon this circumstance, and the record in this case does not disclose a similar effort to exploit Clenin's silence, we hold that the cross-examination in and of itself invokes the rule of *Irvin v. State,* supra, and *Doyle v. Ohio,* supra. A number of states have applied that rule to circumstances which were similar to the facts of this case and to those shown in *Irvin v. State,* supra. *State v. Scott,* 27 Ariz.App. 361, 555 P.2d 118 (1976); *State v. White,* 97 Idaho 708, 551 P.2d 1344 (1976), cert. den., 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976); *Jones v. State,* Ind., 355 N.E.2d 402 (1976). *State v. Mims,* 220 Kan. 726, 556 P.2d 387 (1976); *Warthen v. State,* Okl.Cr., 559 P.2d 483 (1977); *State v. Upton,* 16 Wash.App. 195, 556 P.2d 239 (1976); *State v. Boyd,* W.Va., 233 S.E.2d 710 (1977).

■ The record does not disclose whether Clenin was advised of his constitutional rights by a law enforcement officer. There are comments in *Doyle v. Ohio,* supra, and in some of the cases following it, which discuss the significance of that advice in relation to trial interrogation about the failure to furnish information to law enforcement officials. The right of an accused to remain silent, however, under Art. 1, § 11 of the Constitution of the State of Wyoming, which provides: "No person shall be compelled to testify against himself in any criminal case, * * *," does not depend upon his being advised of that right, but exists by virtue of the constitutional language. Advice as to that right by law enforcement officers or by the justice of the peace or by the judge of the district court is only for the purpose of expanding its protection by assuring that the accused person is aware of it.

■ The State of Wyoming suggests that we are free to examine this record and reach a determination that the error was not prejudicial. The state calls to our attention language from *Doyle v. Ohio,* supra, which suggests that possibility. This might be an appropriate conclusion if our determination were limited to the Fifth Amendment to the Constitution of the United States. Historically, our Court has jealously guarded the right provided in Art. 1, § 11 of the Constitution of the State of Wyoming against any infringement. *Irvin v. State,* supra, *Jerskey v. State,* Wyo., 546 P.2d 173 (1976); *Dryden v. State,* Wyo., 535 P.2d 483 (1975); *Moss v. State,* Wyo., 492 P.2d 1329 (1972); *Priestley v. State,* Wyo., 446 P.2d 405 (1968); *Dickey v. State,* Wyo., 444 P.2d 373 (1968); and *Miskimins v. Shaver,* 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831 (1899). We hold that under this section of our state constitution any comment upon an accused's exercise of his right of silence, whether by interrogation of the accused himself, or by interrogation of others inherently is prejudicial, and will entitle an accused to reversal of his conviction. Such a breach of the accused's constitutional protections is plain error and prejudicial per se. While, in the light of the language of *Doyle v. Ohio,* supra, this may represent an extension of the rule of that case, it is our prerogative to so do in applying our state constitution. See, e. g., *Oregon v. Hass,* 420

U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272 (1976); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975). To the extent that we have gone beyond the factual background for the rule of *Doyle v. Ohio*, supra, in discussing the effect here of questioning about the failure to advise the county attorney of the alibi defense in the light of the advice by the justice of the peace and the district judge, we deem that error also to be plain error and fundamental error.

■ The State of Wyoming also urges that the rule of *Doyle v. Ohio*, supra, need not be given retroactive effect, pointing out that Clenin was tried prior to the promulgation of the decision of *Doyle v. Ohio*, supra, the state urges that that rule be given prospective application only. In *Irvin v. State*, supra, however, while the concept was not specifically discussed, the rule of *Doyle v. Ohio*, supra, was applied in the case of an accused who had been tried prior to the promulgation of the rule. We already are committed to a retrospective application of the rule, at least insofar as those cases which come to us on direct appeal.

■ The State of Wyoming finally urges that the appellant failed to preserve the error by not including this violation of his constitutional rights as a ground for his motion for a new trial, citing *Valerio v. State*, Wyo., 429 P.2d 317 (1967); and *Dickerson v. State*, 18 Wyo. 440, 111 P. 857 (1910), reh. den. 18 Wyo. 440, 116 P. 448 (1911). In *Valerio v. State*, supra, the error urged on appeal never was called to the attention of the district court. While it would appear in *Dickerson v. State*, supra, that objection was made to the admission of certain evidence and the alleged error in ruling on that objection was not made a part of the motion for a new trial, it does not appear that the claimed error was prejudicial nor was it constitutional error nor fundamental and plain error. Rule 34, W.R.Cr.P. was intended as a vehicle, traditional in nature, to permit the trial court an opportunity to correct an error in the trial resulting in a conviction. It was not intended as a procedural device to foreclose consideration on appeal of trial errors which for any reason might not be included among the grounds for a motion for a new trial. Failure to include fundamental and constitutional error in a motion for a new trial does not inhibit the examination of such error by this Court on appeal.

The judgment of conviction is reversed, and the case is remanded to the district court for a new trial.

RAPER, Justice, specially concurring.

I can freely agree that the cross-examination of the defendant with respect to his post-arrest silence reached a point of no return and there was prejudice to him that could not be rescued by application of the harmless error rule.[1] I join in the opinion of the court but wish to comment on the problems posed by a defendant showing up on the day of the trial with an alibi, of which, for conspicuous reasons, he has elected to keep secret and not advise the prosecutor or those concerned with the administration of justice and court management.

In recognition of the position of unfairness in which the State is placed in order to protect and not dilute a sacred right of the accused to remain silent, the Supreme Court of the United States, with some amendment by Congress, has given its blessing to pretrial discovery by the prosecution of any proposed alibi by a defendant, through adoption of Rule 12.1, F.R.Cr.P., effective December 1, 1975.[2] The major

---

1. When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

*Chapman v. United States*, 5 Cir. 1977, 547 F.2d 1240.

2. Rule 12.1, F.R.Cr.P., provides:

"(a) *Notice by defendant.* Upon written demand of the attorney for the government stating the time, date, and place at which the

purpose of the notice-of-alibi rule was to prevent unfair surprise to the prosecution. 8 Moore's Federal Practice—Criminal Rules, 2nd Ed. ¶ 12.1.02, pp. 12.1–6 to 12.1–7.

The Supreme Court of the United States in *Williams v. State of Florida*, 1970, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, concluded, along with every other court that had considered the question, the privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose his alibi witnesses. The court observed that given the ease with which an alibi can be fabricated, the interest of the State[3] in protecting itself against an eleventh-hour defense is both obvious and legitimate. It noted that the adversary system of trial is "not yet a poker game in which players enjoy an absolute right always to conceal their cards until played."

With a notice-of-alibi rule, the problem of this case would possibly never have arisen. As noted by Chief Justice Burger in his concurring opinion to *Williams*, a notice-of-alibi rule has added benefits. It will serve the function of disposing of cases without trial in appropriate circumstances. The

prosecutor, upon learning of the alibi defense, investigates prospective witnesses. If reliable, he will reexamine his case and a dismissal may result. On the other hand, inquiry may reveal the alibi to be contrived and the witnesses subject to impeachment. In this situation, defense counsel may wish to reexamine his case and, if false testimony is proposed, seek to withdraw as counsel or try to persuade his client to plead guilty. Such a rule would assist in moving away from the "sporting contest" idea of criminal justice. I would add, as a further prediction, that there would be fewer alibi defenses attempted.

My ultimate purpose in this concurring opinion is to strongly recommend that this court adopt as a part of its criminal rules, the federal notice-of-alibi rule or something in a similar context and thus remove a long-standing unfairness from our system of criminal jurisprudence.

alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

"(b) *Disclosure of Information and Witness.* Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the attorney for the government shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

"(c) *Continuing duty to disclose.* If prior to or during a trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under subdivision (a) or (b), the

party shall promptly notify the other party or his attorney of the existence and identity of such additional witness.

"(d) *Failure to comply.* Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.

"(e) *Exceptions.* For good cause shown, the court may grant an exception to any of the requirements of subdivisions (a) through (d) of this rule.

"(f) *Inadmissibility of Withdrawn Alibi.* Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention."

**3.** At least 15 states, besides Florida, have alibi notice requirements of one sort or another. Footnote 11 to *Williams v. State of Florida*, supra.