**Anthony Max ABEYTA, Appellant**
**(Defendant below),**

v.

**The STATE of Wyoming, Appellee**
**(Plaintiff below).**

**No. 4985.**

Supreme Court of Wyoming.

March 29, 1979.

Frank R. Chapman, Casper, signed the brief and appeared in oral argument on behalf of the appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen. and Sandra K. Dunn, Senior Law Student and Legal Intern, signed the brief. After being introduced by Mr. Stack, Ms. Dunn presented oral argument for appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE, JJ., and GUTH-RIE, J., Retired.*

GUTHRIE, Justice, Retired.

Tanya Jean Duran, the natural daughter of appellant and Pauline Duran, died on October 14, 1977, after receiving burns from scalding water in a bathtub at the residence where she lived with appellant and her mother. These burns were apparently inflicted between the hours of ten and twelve o'clock in the morning. Little two-year-old Tanya died some twelve or fifteen hours later from aspiration, which was directly connected to the burns and the shock resulting from them. Her body surface was covered with burns over fifty percent of its area. The record revealed there was no medical attention before her death.

Based upon these facts, the appellant was charged with first-degree murder, but at a preliminary hearing the committing magistrate determined that there was no evidence of premeditation and bound the defendant over for trial upon the charge of second-degree murder. Upon the trial of this charge, the man was found guilty of manslaughter, and this appeal results upon that conviction.

Appellant comes to this court with two propositions, which he contends dictate reversal of this conviction. They are as follows:

(1) That the trial court improperly refused to grant a mistrial following a comment solicited by the State on the defendant's right to remain silent.

(2) That the trial court improperly refused to instruct the jury on a lesser and included defense of child abuse.

■ Appellant claims a mistrial should have been granted based upon the following examination of Palmer Jaramillo, who appeared as a prosecution witness and which is as follows:

"Q. [by Mr. Carroll] Now have you seen him since the death of Tanya?

"A. Yeah, I seen him in the streets.

"Q. And did you have any conversation with him about Tanya's death?

"A. Yeah, that one time.

"Q. And what was that?

"A. Just asked—he told me it was—he stopped me and told me that if I had the time—an investigator had come down to my house asking questions, and he told me that my times were all wrong, the times that I had seen him out an hour or two hours late—about the timing. And I asked him if he had hurt the baby and he didn't give me no remark.

"Q. You say you asked him if he had hurt the baby?

"A. Yeah.

"Q. What did he say?

"A. He didn't give me no remark, he just shook his head.

"MR. CHAPMAN: Your Honor, I object to that on the ground that it calls for an admission. I would like to approach the bench on this issue, if I might.

"THE COURT: All right.

"(The following proceedings were had at the bench between the Court and counsel.)

"MR. CHAPMAN: Your Honor, at this point I move for a mistrial on the grounds that Mr. Carroll specifically elicited the question about Mr. Abeyta concerning this incident. I think it goes to the same area of law as *Doyle v. United States*, wherein you cannot use an admission by silence against the person, and I think Mr. Carroll is attempting to do that in the testimony of Mr. Jaramillo.

"THE COURT: I will overrule the motion in this case, because Mr. Jaramillo is not a member of law enforcement and he had no reason to warn him of his rights not to make a statement, and he had the

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5-1-106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

right of an interested friend or human being to discuss the matter with him, and we will overrule your motion."

It is to be observed that defendant's counsel did not, when the first answer was given about making no remark, make any objection thereto or move to strike or request that the jury be instructed to disregard the same. Immediately following, when the direct question was asked, defendant's counsel made no objection but waited until the answer. Although he asserted an objection, which this court does not believe applicable, he still made no motion to strike so that the same be disregarded but confined his request to the motion for a mistrial. He had apparently at that time elected to pursue an "all or nothing-at-all approach."

This appellant bases his claim principally on the case of *Clenin v. State*, Wyo., 573 P.2d 844 (1978), which rests in and was preceded by *Irvin v. State*, Wyo., 560 P.2d 372 (1977); *Jerskey v. State*, Wyo., 546 P.2d 173 (1976); and *Gabrielson v. State*, Wyo., 510 P.2d 534 (1973). It is to be remembered that *Irvin* and in turn *Clenin* rest directly upon the case of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). These cases all involve factual situations where custodial interrogation makes applicable Art. 1, § 11, Wyoming Constitution, and the Fifth Amendment to the Constitution of the United States, and their prohibitions against self-incrimination to those cases, and the rule identified in *Clenin* is proper to apply under those factual situations.

It is appropriate and necessary in our disposal that the basic purpose of these amendments be considered to properly determine just how broad an area these strictures permeate.

Since the case of *Doyle, supra*, rests directly within the reasoning of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), rehearing denied, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121, it is impossible to discuss this area without an analysis thereof because that case's long shadow reaches into all cases where the question of self-incrimination may arise or has been asserted.

It is all too frequently ignored by those who propose extensions of the application of the Fifth Amendment based upon *Miranda* that the Supreme Court in that case limited the field of decision and inquiry in a most careful manner. The first full paragraph of that opinion, 384 U.S. at 439, 86 S.Ct. at 1609, contains this statement outlining the scope of that decision:

"... More specifically, we deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation ..."

Perhaps mindful of the possible overapplication of this case, later on at 478, 86 S.Ct. at 1630, the Court said:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. ..."

*Doyle, supra*, is a direct lineal descendant of *Miranda*, and its roots rests firmly therein. The basis of that decision rests upon and is demonstrated by the following statement at 426 U.S. 617, 96 S.Ct. at 2244:

"Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. ..."

Later, there appears the following:

"... Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. ..."

Inasmuch as the claim in this case rests completely in the self-incrimination prohibition found in the aforementioned amendments, it is valuable that we explore the purpose of such amendments. In *Application of [Re] Gault*, 387 U.S. 1, 47, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), we find two basic reasons set out for the enforcement of this right. One is to safeguard against fear and torture so that there will not be extort-

ed expressions of untruth. This is protection against such actions which would destroy the purity of judicial process and the ascertainment of the truth, which remains the function of the courts. Another equally demanding reason that this be enforced is set out in *Gault*, at 387 U.S. 47, 87 S.Ct. at 1454, as follows:

" . . . the privilege reflects the limits of the individual's attornment to the state and in a philosophical sense insists upon the equality of the individual and the State. . . . "

And later:

" . . . One of its purposes is to prevent the state, whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the state in securing his conviction."

This principle was also recognized in *Miranda* in the following manner at 384 U.S. 459, 86 S.Ct. at 1620:

" . . . All these policies point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. . . . "

These authorities clearly demonstrate the purpose of provisions against self-incrimination that are recognized and protected in the Fifth Amendment of the United States Constitution and § 11, Art. 1, of the Wyoming Constitution, and unless these purposes would be served, these protections should not be invoked. In this case, there is no custodial interrogation nor any activity of the state or its enforcement officers that did in any manner contravene the underlying purpose of these amendments. This involves only a conversation between an apparent friend and this defendant. We must then hold that based upon these authorities there is no reason to invoke the inhibition of this incrimination to these circumstances.

The thrust of both *Escobedo v. State of Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda, supra*, was

directed at "the potentiality for compulsion." *Schaumberg v. State*, 83 Nev. 372, 432 P.2d 500, 501, and numerous cited authorities. *State v. McAlvain*, 104 Ariz. 445, 454 P.2d 987, 989 (1969), cert. denied, 396 U.S. 1023, 90 S.Ct. 597, 24 L.Ed.2d 516. The case of *State v. McKnight*, 52 N.J. 35, 243 A.2d 240, 251 (1968), suggests that *Miranda* "expressly sustains confessions made by a suspect who is not in 'custody or otherwise deprived of his freedom of action in any significant way' ". In the case of *People v. Hawkins*, 53 Ill.2d 181, 290 N.E.2d 231, 233, it was held that the confession made by a juvenile and to his father in the presence of the police and authorities, without any *Miranda* warning, was admissible.

Appellant's argument rests principally on *Clenin, supra*, in this statement at 573 P.2d 846:

" . . . We hold that under this section of our state constitution any comment upon an accused's exercise of his right of silence, whether by interrogation of the accused himself, or by interrogation of others inherently is prejudicial, and will entitle an accused to reversal of his conviction. Such a breach of the accused's constitutional protections is plain error and prejudicial per se. . . . "

Insofar as this case is concerned, reliance upon *Clenin* is misplaced. That case involves custodial interrogation. Extracts of statements from *Clenin, Irvin, Jerskey*, and *Gabrielson*, which of course were all made in the context of their factual situations, are of little value and reliance thereon is misplaced because they all involve failure to answer while under custodial interrogation.

None of the authorities cited by appellant demonstrate any "breach of any constitutional protection" in this factual situation. Nor do they point out any constitutionally protected right under § 11, Art. 1, Wyoming Constitution, and Fifth Amendment of the United States Constitution, upon which the right to silence rests when it involves communications between two mutual acquaintances.

## FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSE

■ Appellant's claim that it was error not to give certain offered instructions on the offense of child abuse[1] as an included offense is answered by the case of *Jones v. State*, Wyo., 580 P.2d 1150 (1978). Appellant here makes an attempt to distinguish *Jones* from the instant case based upon certain testimony that had the baby received prompt medical attention immediately following the burns there was a 50 to 75 percent chance that she might have survived. This is clearly speculative. There is no suggestion in the evidence that the cause of death was anything but the burns that were suffered. There is positive testimony by the two experts that the burns were the cause of death. "Speculative possibilities" were suggested as the basis for such an instruction in *Jones*, at p. 1153, as in this case. But in the absence of positive evidence, an instruction on child abuse was not deemed to be required. There is no reason to depart from this standard.

Affirmed.