Juan VARGAS–ROCHA, a/k/a
Wienceseloas Martinez,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 94–104.

Supreme Court of Wyoming.

March 8, 1995.

Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, and David Gosar, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., and D. Michael Pauling, Sr. Asst. Atty. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Juan Vargas–Rocha appeals from his conviction for possessing cocaine with the intent to deliver.

We affirm.

### Issues

Appellant did not include a statement in his brief of the issues which are being presented for our review as is required by W.R.A.P. 7.01(d). He does, however, make seven arguments in his brief:

Argument I

Evidence derived from the illegal stop of the vehicle in which Appellant was a passenger, and the subsequent unconstitutional NCIC computer search of his identification, was "fruit of the poisonous tree" and should have been suppressed[.]

Argument II

Appellant's state and federal constitutional rights against compelled self-incrimination were violated by testimony and comment on Appellant's silence[.]

Argument III

Testimony and comment expressing a belief that the Appellant was guilty of the charged crime was an improper and inadmissible opinion on the ultimate issue[.]

Argument IV

Reversible error occurred when the court failed to give a cautionary instruction requested by defense counsel[.]

Argument V

Reversible error occurred when the trial court failed to instruct the jury that their verdict must be unanimous[.]

Argument VI

The Appellant was deprived of a fair trial by the prosecutor's improper and prejudicial closing argument[.]

Argument VII

Appellant's conviction should be reversed pursuant to the doctrine of cumulative error[.]

**Facts**

On October 4, 1993, while Stephen Townsend, a Wyoming highway patrolman, was completing a traffic stop south of Cheyenne on Highway 85 near the Colorado–Wyoming state line, a vehicle traveling north passed him. Patrolman Townsend observed that the vehicle had a Colorado license plate on its rear and that it did not have a license plate on its front. He decided to stop the vehicle, intending to issue a warning citation to the driver for improperly displaying license plates.

Patrolman Townsend stopped the vehicle and asked the driver for his driver's license and the vehicle registration. The driver gave the vehicle registration to Patrolman Townsend but not his driver's license, so the

patrolman asked the driver for his name and date of birth.[1] The name which the driver gave to Patrolman Townsend was not the same name as was listed on the vehicle registration. In addition to the driver, Appellant and two other passengers occupied the vehicle. Patrolman Townsend asked the three passengers what their names were and asked them if they had any identification. Appellant gave his nonresident alien identification card and his social security card to the patrolman, but none of the other passengers had any identification.

Patrolman Townsend took Appellant's documents and the information which he had obtained from the driver and returned to his patrol car. He radioed the dispatcher, requesting that a computerized search be made of the data base maintained by the National Crime Information Center (NCIC) to determine whether the driver or Appellant had a valid driver's license or any outstanding wants or warrants.[2] The search revealed that a Colorado warrant existed for Appellant's arrest.[3] Patrolman Townsend decided to arrest Appellant pursuant to the Colorado arrest warrant, and he radioed for additional patrolmen to be sent to help him make the arrest.

When the additional patrolmen arrived approximately ten minutes later, Patrolman Townsend returned to the vehicle and asked the occupants to exit one at a time. When Appellant exited, Patrolman Townsend "patted him down" and found a roll of currency which measured approximately one inch to two inches in diameter and which totaled about $750 in Appellant's right front pants pocket. None of the other occupants was carrying any money.

1. The record indicates that the driver did not understand the English language and that Appellant acted as an interpreter for Patrolman Townsend and the driver.

2. The record does not clearly indicate why Patrolman Townsend requested that a warrant check be made for Appellant, although he did testify that requesting the check was standard procedure.

3. The search also revealed that no license was on file for the name which the driver had given to Patrolman Townsend. The driver later admitted

that he was the registered owner of the car. Patrolman Townsend requested that a second search, using the driver's true name, be made of the NCIC data base. He, consequently, learned that the driver's Colorado driving privileges had been suspended. The patrolman eventually cited the driver for driving while his privileges were suspended, and he charged him with interfering with a police officer because he had given a false name to the patrolman. The record suggests that the other two passengers' names were also entered during the second search of the NCIC data base.

Because none of the occupants had a driver's license, Patrolman Townsend determined that the car would have to be towed, and he began making an inventory search of the car. During the inventory search, he found a clear plastic bag on the floor under the seat located in front of what had been Appellant's seat. The bag contained eighteen one-half gram bindles of cocaine, a small amount of marijuana, and a small rock of cocaine.

Patrolman Townsend held up the bag and asked the occupants who owned it. No one said anything. Since the bag contained what appeared to be controlled substances, Patrolman Townsend called the Division of Criminal Investigation (DCI), and two DCI special agents were dispatched to the scene. One of the DCI agents advised Appellant of his *Miranda* rights and questioned him in the agents' vehicle. Appellant denied that he knew anything about the bag of drugs, and he claimed that he was carrying the currency because he planned to buy a car in Cheyenne.

The DCI agents transported Appellant to their office in Cheyenne and resumed their questioning after they again advised Appellant of his *Miranda* rights. Appellant admitted that the drugs were his, but he claimed that they were for his personal use.

Appellant was charged with possessing cocaine with the intent to deliver in violation of WYO.STAT. §§ 35–7–1031(a)(i) and 35–7–1016(b)(iv) (1994). A jury found him guilty, and the district court sentenced him to serve a term of not less than five years nor more than seven years in the Wyoming State Penitentiary. Appellant appealed to this Court.

## Standard of Review

Appellant bases only two of his claims on appeal upon contemporaneous objections which were made by defense counsel. The remaining issues are, therefore, subject to our plain error standard of review. *See Christian v. State*, 883 P.2d 376, 380 (Wyo. 1994). We conclude, however, that it is not necessary for us to apply our plain error standard of review in this case because we do not discern any error which occurred in the proceedings below. *See Smith v. State*, 880 P.2d 573, 574 (Wyo.1994).

## Motion to Suppress

Appellant contends that the traffic stop was illegal and violated his state and federal constitutional rights and that the evidence derived from the traffic stop should have been suppressed because it was the "fruit of the poisonous tree." Specifically, he claims that the patrolman had no authority to stop the vehicle for a violation of Colorado law and that, therefore, the initial traffic stop was illegal. He further claims that all the evidence derived from the stop of the vehicle should have been suppressed because the patrolman did not have a reasonable suspicion that Appellant was engaged in, or about to become engaged in, criminal activity when he requested that a search of the NCIC data base be made and because the search of the NCIC data base was a "prohibited pretext search."

Patrolman Townsend had authority to make the initial traffic stop. His authority originated in two statutes. First, WYO.STAT. § 24–12–102 (1993) states in pertinent part: "The state highway patrol ... shall enforce all the motor vehicle laws of this state." Second, WYO.STAT. § 31–2–201 (1994) requires owners of vehicles which are being driven in Wyoming to apply for Wyoming registrations if their vehicles do not display license plates in accordance with the laws of another state. Section 31–2–201(a), (d)(vi), (d)(vii).

The car in this case had a Colorado license plate on its rear but did not have any license plate on its front. The Colorado statutes require that a vehicle have a license plate on both its rear and its front. COLO.REV.STAT. § 42–3–113(1) (1993) (amended 1994). Since the car's license plates were not displayed in accordance with Colorado law, Patrolman Townsend had a reason to suspect that the driver was violating Wyoming law, and he had authority to stop the car.

Appellant claims that the district court should have suppressed the roll of currency, the bag of drugs, and the statements which Appellant made to the investigating officers. We do not agree. Patrolman Townsend testified that he had decided the car would have

to be towed because none of the occupants had a driver's license and that he, therefore, performed an inventory search to document the items which were left in the car. While he was performing the valid inventory search, Patrolman Townsend found the bag of drugs on the floor under the seat which was in front of where Appellant had been sitting.

An inventory search of an impounded automobile is not unreasonable under the Fourth Amendment when it is conducted pursuant to a standardized police procedure. *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *see also Williams v. State*, 557 P.2d 135, 139 (Wyo.1976). " '[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.' " *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (quoting *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987)).

The evidence derived from the traffic stop was admissible because the officers would have discovered all the evidence which they discovered in this case through the valid inventory search whether or not the search of the NCIC data base had been made.

> Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial....
>
> ....
>
> ... [W]hen ... the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible.

*Nix v. Williams*, 467 U.S. 431, 446–48, 104 S.Ct. 2501, 2510–11, 81 L.Ed.2d 377 (1984).

## Comments Concerning Silence

Appellant alleges that his state and federal constitutional rights against compelled self-incrimination were violated when the prosecutor elicited testimony and made comments about Appellant's exercise of his right to remain silent.

" '[T]he use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment.' " *Brecht v. Abrahamson*, —— U.S. ——, ——, 113 S.Ct. 1710, 1716, 123 L.Ed.2d 353 (1993) (quoting *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976)). This Court has extended the protection offered by the federal constitution by broadly interpreting Wyoming's constitutional prohibition against infringing upon a defendant's right to remain silent:

> Historically, our Court has jealously guarded the right provided in Art. 1, § 11 of the Constitution of the State of Wyoming against any infringement.... [U]nder this section of our state constitution any comment upon an accused's exercise of his right of silence, whether by interrogation of the accused himself, or by interrogation of others inherently is prejudicial, and will entitle an accused to reversal of his conviction. Such a breach of the accused's constitutional protections is plain error and prejudicial per se.

*Clenin v. State*, 573 P.2d 844, 846 (Wyo.1978). *See also Westmark v. State*, 693 P.2d 220, 225 (Wyo.1984). We apply the *Clenin* rule on a case-by-case basis. *Parkhurst v. State*, 628 P.2d 1369, 1381 (Wyo.), *cert. denied*, 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). "Absent a showing of prejudice and where the statement is not a comment upon an appellant's silence, but merely a reference to it, we will not reverse." 628 P.2d at 1382. We consider the comments in the context in which they were made. *Gomez v. State*, 718 P.2d 53, 55–56 (Wyo.1986).

Appellant refers to five occurrences which he claims constituted direct comments concerning his silence. The first two occurrences took place while the prosecutor was questioning Patrolman Townsend:

> Q. ... You testified you found this baggie as you indicated on the diagram, which would be at the feet of [Appellant]. What did you then do?

A.  I held the baggie up so the four of them could see it, asked who owned it, and *none of them said anything.*

. . . .

Q.  [Defense counsel] asked you if it was true that [Appellant] was the most cooperative out there, do you remember that question?

A.  Yes.

Q.  Now, did [Appellant] admit to you that they were his drugs when you first found that bag, stood up and turned and said whose are these, did he say anything then?

A.  *No.*

(Emphasis added.)  The second two occurrences took place during the prosecutor's direct examination of one of the DCI agents:

Q.  He indicated to you that he was looking at coming to Cheyenne and maybe buying a car?

A.  Yes.

Q.  Did he explain how it was that he could drive a car away and he didn't have a · driver's license?

A.  I was looking through his wallet and I was asking him why he was coming to Cheyenne to buy a car and drive it out since he didn't have a driver's license, *he didn't answer.*

. . . .

Q.  Any conversations as you drove to town?

A.  While we were going back, I told [Appellant] that we were going to submit all the drugs to the crime lab to be analyzed, and I told him that one of the things they do is take fingerprints off the bags and off the bindles and if the drugs weren't his, then he wouldn't have to worry because his fingerprints won't be on them. But I asked him if there was any reason why they should be on there and *he didn't say anything.*  So I told him to think about it and we would talk a little more down at the office.

(Emphasis added.)  The last occurrence transpired during the prosecutor's closing argument:

That's what we know.  Then we have a search of the car and we find the bindles of cocaine that you've seen in the plastic bag. Patrolman Townsend pulls it out of the car, holds it up in the air, calls back to the four people and says whose is this.  *Nobody says anything.*  So he calls [one of the DCI special agents who] comes out to the scene.

. . . .

Now if you recall [defense counsel] in his opening statement characterized that as cooperation.  You will see and the testimony will show [defense counsel] said his client cooperated with law enforcement. Well, what I just described to you, the testimony of the officers, is that cooperation or is it more limited self-serving statements and actions that he does as he needs to as the case unfolds and he's confronted with the evidence.

(Emphasis added.)

Appellant argues that these comments were much like the comments which we condemned in *Jerskey v. State,* 546 P.2d 173 (Wyo.1976).  While some of the comments in this case were similar to those in *Jerskey,* they were not made in a similar context at trial.  In *Jerskey,* the prosecutor raised the issue of the defendant's silence when he elicited testimony about that silence from the investigating officers.  ˙546 P.2d at 178–79. We concluded that the prosecution had elicited the testimony "to create the inference that an honest answer would have established the appellant's guilt."  546 P.2d at 183.

Here, by contrast, defense counsel opened the door to the comments by repeatedly raising the issue of Appellant's cooperation.  The defense claimed that Appellant would not have been cooperative if he had intended to deliver the cocaine rather than to possess it for his own use.  The prosecutor offered the comments in an effort to rebut Appellant's theory.  In this context, the statements were not comments which pertained to Appellant's exercise of his right to remain silent.  *See Gomez,* 718 P.2d at 55–56.  We conclude that the comments did not constitute a violation of either the state constitution or the federal constitution when they are considered in the context in which they were made.

### Comments Concerning Guilt

Appellant asserts that the district court improperly allowed the testimony in which the witness expressed a belief that Appellant was guilty of the crime charged to be admitted into evidence and that the testimony deprived him of his state and federal constitutional rights to have a fair trial.

"[T]estimony offering an opinion as to the guilt of the defendant, when elicited by a prosecuting attorney, should be perceived as error per se." *Stephens v. State,* 774 P.2d 60, 68 (Wyo.1989).

The inquiry by the court when claims like this are raised, assuming that proper objections are presented, must be whether the testimony sought to be elicited will constitute a direct, and therefore impermissible, opinion with respect to the innocence or guilt of the accused or whether it is nothing more than related information offered to assist the jury in resolving the factual issues placed before it. Testimony that is given only as an aid to the jury in its pursuit of the facts and does not address directly the guilt of the accused in a conclusional way does not deprive a defendant of the constitutional right to a trial by jury.

*Saldana v. State,* 846 P.2d 604, 617 (Wyo. 1993) (citations omitted).

Appellant claims that in four instances the district court improperly allowed comments which pertained to his guilt to be admitted into evidence. All four comments occurred during the prosecutor's direct examination of a DCI agent:

Q. Who did he say had packaged up each and every one of the 18 separate bindles?

A. He said he had.

Q. Did you question him about that?

A. I told him that was a lot of work to go to. He had indicated that it was for personal use. And I told him that given the fact that we had found a large amount of currency in small denominations, which is consistent with the sale of small quantities of cocaine, due to the fact that we had found him with a lot of individual bindles that appeared to be ready for resale, the fact that he had the cocaine rock there ready to cut some more off possibly to sell or whatever, *I told him that all those ... factors taken into consideration showed to me that indeed he had brought that cocaine up from Greeley to sell in Cheyenne; that it wasn't for personal use, that there was no way that he would take that much with him from Greeley to Cheyenne if it was just for personal use.*

Q. How did he respond?

A. Well, he said that he had forgotten that he had it with him when he left Colorado, that when the Highway Patrolman pulled in behind him, turned [his] lights on, he got scared because he remembered he had it with him then and that he had hidden it under the seat at that time.

Q. He told you that he forgot he left Greeley with it and he remembered he had it?

A. After the Patrolman pulled in behind him.

Q. Did you talk to him about going to the trouble of packaging 18 separate little bindles each with exactly one half gram in it for his own use?

A. I did ask him about that, yes.

Q. How did he respond?

A. He said that he knew exactly how much cocaine he was using if he had them all weighed out and packaged like that, and *I told him I didn't believe that.*

. . . .

Q. Did you confront him with that very statement, it's not consistent with what I know?

A. Yes, I told him all the factors taken into consideration, what we had caught him with, the money, the drugs packaged in that way, *all indicated to me that he was up here to sell cocaine—*

[DEFENSE COUNSEL]: I'll object, I'll object.

[PROSECUTOR]: Your Honor, that's the form of the question he confronted the Defendant with.

[DEFENSE COUNSEL]: Your Honor, it's an opinion and I request that it be excluded, it's an opinion that goes to the

ultimate issue, the ultimate fact in issue and request that the—if the Court allows the testimony that the Court instruct the jury as to the limited purpose for which it is presented.

THE COURT: The objection is overruled.

Q. [By [Prosecutor]) Did you confront him, in essence, with your expertise saying nobody does it that way?

A. *Yes.*

Q. How did he respond?

A. He said he did it that way.

(Emphasis added.)

None of the DCI agent's statements constituted a direct statement of opinion with respect to Appellant's guilt. *Saldana,* 846 P.2d at 617. The statements were not direct statements to the jury; they merely related the DCI agent's conversation with Appellant to the jury. The statements were offered to assist the jury in resolving the factual issue of whether Appellant was telling the truth. Since the statements did not constitute a direct opinion as to Appellant's guilt, the district court properly allowed them to be admitted.

### Cautionary Instruction

◼ Appellant claims that the district court violated W.R.E. 105 and thereby deprived him of his state and federal constitutional rights to have a fair trial when it failed to give the cautionary instruction to the jury which defense counsel requested during the prosecutor's direct examination of the DCI agent. He maintains that the jury should have been instructed that the DCI agent's opinion, as expressed through his conversation with Appellant, was not evidence of guilt but was to be considered only to place Appellant's responses into context.

◼ W.R.E. 105 states in pertinent part:

When evidence which is admissible . . . for one (1) purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

"A legally and factually correct instruction must be tendered to the court before error can be predicated upon refusal to give it." *Grabill v. State,* 621 P.2d 802, 813 (Wyo. 1980). When a party wishes to limit the purpose for which evidence is admitted, that party should set forth the purpose in a request for a limiting instruction. *See, e.g., id.* "If the rule incorporated in a proffered instruction is included in other instructions, it properly may be refused by the trial court." *Johnson v. State,* 872 P.2d 93, 99 (Wyo.1994).

The instructions which were given to the jury stated that the State had the burden of proving that the defendant was guilty beyond a reasonable doubt, that it was for the jury to decide issues of fact, and that "[l]aw enforcement officers are not entitled to any greater credence than any other witness appearing before you." We have previously concluded that, because the DCI agent's testimony did not constitute a direct comment with regard to Appellant's guilt, the district court properly allowed the testimony which defense counsel sought to limit to be admitted. Since the testimony was properly allowed, the district court had no reason to restrict its scope pursuant to W.R.E. 105.

### Unanimous Verdict Instruction

◼ Appellant asserts that reversible error occurred when the district court failed to instruct the jury that its verdict must be unanimous.

Article 1, Section 9 of the Wyoming Constitution recognizes the right of an accused to receive a unanimous verdict by twelve impartial jurors. *Brown v. State,* 817 P.2d 429, 439 (Wyo.1991). W.R.Cr.P. 31 states in part:

(a) *Return.*—The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.

. . . .

(d) *Poll of jury.*—When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

" 'Polling is one means of ensuring unanimity.' " *United States v. Hernandez–Garcia,* 901 F.2d 875, 877 (10th Cir.) (quoting *United States v. Morris,* 612 F.2d 483, 489 (10th Cir.1979)), *cert. denied,* 498 U.S. 844, 111 S.Ct. 125, 112 L.Ed.2d 94 (1990).

In this case, after the jury's verdict had been announced, defense counsel requested that the jury be polled. The district court polled the jury, and all the jurors concurred in the verdict. The poll of the jury ensured that the verdict was unanimous; therefore, no error occurred.

### Closing Argument

Appellant alleges that the prosecutor's improper closing argument deprived him of his right to have a fair trial.

With respect to closing arguments, we have stated:

> The prosecutor may comment on the evidence, and he may make any reasonable inferences that follow from that evidence. He may not, however, inflame or mislead the jury. The trial court is in the best position to consider the appropriateness of the argument. Counsel are allowed wide latitude in the scope of their argument.

*Taul v. State,* 862 P.2d 649, 659 (Wyo.1993) (citations omitted).

> In the course of our review, we consider the entire closing argument and do not take individual sentences or phrases out of context. We also consider the closing argument in the context of the entire trial record.

*Smith,* 880 P.2d at 574 (citations omitted).

■ We have already addressed the comment made by the prosecutor during his closing argument which Appellant claims was an improper comment on his right to remain silent. Appellant also claims that several instances occurred during the prosecutor's closing argument in which the prosecutor implied that Appellant was guilty by referring to him as a "drug dealer" or by referring to his "drug dealing activities." None of these instances amounted to a direct comment with respect to Appellant's guilt. *See Saldana,* 846 P.2d at 617. The prosecutor's comments constituted reasonable inferences on the basis of the evidence adduced, and they were, therefore, proper. *Taul,* 862 P.2d at 659.

Appellant lists numerous additional comments which the prosecutor made during his closing argument and which Appellant claims were improper. We have thoroughly examined all the comments listed and the parties' arguments with respect to each of the comments. The prosecutor's comments were all within the wide latitude which attorneys enjoy while they are presenting their closing arguments.

### Cumulative Error

■ Appellant contends that his conviction should be reversed pursuant to the doctrine of cumulative error. No error occurred in this case. When no error has occurred, a claim of cumulative error cannot be recognized. *Springfield v. State,* 860 P.2d 435, 453 (Wyo.1993).

### Conclusion

Appellant's conviction for possessing cocaine with the intent to deliver is affirmed.

GOLDEN, Chief Justice, specially concurring, with whom LEHMAN, Justice, joins.

I write separately only to address briefly the accused's complaint that he was deprived of a fair trial by the prosecutor's improper closing argument.

Charged with possession of cocaine with intent to deliver, the accused admitted possession but denied having the intent to deliver, claiming he possessed it for his own personal use. Thus, the battle at trial was joined over the single discrete issue of whether the prosecution could prove beyond a reasonable doubt that the accused had the intent to deliver the cocaine he admitted possessing.

The accused possessed eighteen one-half gram bindles (a small folded piece of paper) and "a small rock" of cocaine (weight unknown). When arrested, he had $750, consisting of several hundred dollar bills and various other denominations, including twen-

ties and fifties. He told one of the law enforcement personnel who questioned him that he purchased "a rock" of cocaine in Mexico and, for his own personal use, had placed one-half gram portions from the "rock" in the separate bindles. The accused further told him he had a job in Greeley where he had earned the $750 he was carrying; that he was traveling from Greeley to Cheyenne to buy a car with the money; that he had forgotten he had the cocaine with him until stopped by the Wyoming Highway Patrol at which time he remembered he had it so he hid it under the car seat in front of him.

One of the law enforcement personnel testified that from his law enforcement experience it was known that ordinarily a personal user of cocaine would not package separate bindles for personal consumption. Cocaine sellers ordinarily package their product in separate bindles.

Also on behalf of the prosecution, a jail informant, who had shared quarters with the accused following the latter's arrest, testified that the accused told him that when arrested he was traveling to Cheyenne to sell cocaine to a friend to whom he had been selling for a year.

The above and foregoing hard evidence was the product of the prosecution's case-in-chief. The accused presented no evidence in his defense-in-chief.

From an evidentiary perspective, the prosecution's case that the accused had the intent to deliver the eighteen bindles and perhaps more was strong. This was not a close case.

During the prosecutor's initial closing argument, the accused's experienced defense counsel voiced no objections about improper argument. In the approximately ten pages of transcript of the prosecutor's initial closing statement, the prosecutor emphasized the key pieces of hard evidence: the $750 cash, the eighteen packaged bindles, the ordinary way sellers sell is with bindles, and the accused's admission to the jailhouse informant of his intent to sell to a friend in Cheyenne to whom he had been selling for a year.

With respect to these ten pages of transcript of the prosecutor's initial closing argu-

ment, the accused's appellate counsel points to many instances in which he finds improper comment, ranging from personal belief of guilt, to the accused's possible illegal alien status, to comment on the right to remain silent, to linking the accused's nationality with drug trafficking from Mexico, to the ease with which the accused could make money selling drugs, to characterizing the accused's defense as one that challenged the jury's intelligence, and to encouraging the jury to perform their civic duty.

I have read these passages in the context of the whole case and the entirety of the closing argument. Many of the instances complained about are not improper argument. The few that are borderline are not so flagrant that they survive the application of the rule of waiver. *Armstrong v. State,* 826 P.2d 1106, 1115 (Wyo.1992).

During the prosecutor's rebuttal closing argument, which consists of approximately five pages of transcript, the accused's experienced trial counsel voiced but one objection. In context this is what occurred. In his closing argument, defense counsel had argued that the prosecution's jailhouse informant was not credible because the law enforcement authorities had not investigated information he had given them about the presence of a quantity of cocaine at a location in Greeley. In rebuttal, the prosecutor commented on facts not in evidence when he stated:

Perhaps [defense counsel] forgot, but I'm sure you haven't. Remember, it was all over the paper about three weeks ago about all the arrests down in Greeley.

To this remark, defense counsel objected "that's not in evidence." The trial judge did not rule on the objection, the prosecutor continued in rebuttal, and defense counsel said nothing further. Within seconds, the prosecutor remarked that Colorado law enforcement authorities do act on information provided by Wyoming law enforcement authorities and then he added, "[a]nd yet people get killed in shoot-outs, but that's indeed the violent nature of this drug."

Defense counsel did not object to this remark. On appeal, however, appellate de-

fense counsel assigns this remark as plain error, but provides precious little analysis of the alleged material prejudice to the accused's substantial right to a fair trial.

Another remark made by the prosecutor during rebuttal, which also did not draw defense counsel's objection, occurred when the prosecutor commented on defense counsel's argument that the evidence had shown each of the eighteen bindles possessed by the accused contained only 0.2 grams instead of 0.5 grams. Accusing defense counsel of minimizing the accused's activity, the prosecutor argued:

> He says when you add it all together that's all there is. But it's much more likely, ladies and gentlemen, the tip of the iceberg. What you see above water is no where near what's under water. **What you see here in court is no where near the volume sales this individual has been doing.** (emphasis added)

On appeal, appellate defense counsel alleges that this remark constituted plain error—it was so flagrant as not to escape the rule of waiver. Appellate defense counsel correctly points out that the accused was on trial for the charged crime, not for "the high volume of sales" with which the prosecutor suspected him to be involved. Appellate defense counsel sees the prosecutor's remark as "a blatant attempt to secure a conviction outside the evidence presented in the case." He asks us to condemn strongly improper remarks of this nature. We have in the past, we do now, and we will do so in the future should they recur, which they, regrettably, probably will. Given our standard of review applicable to this particular kind of error and considering these remarks in the context of the total case and the entirety of closing argument, I cannot say that the "so flagrant" line was crossed in these instances.

That is not to say, however, that this particular prosecutor, or any other prosecutor in this state, has a free ticket from this Court to repeat this type of improper argument. It must stop—now!

Perhaps we must remind both prosecutors and defense counsel, again, about their respective roles with respect to this particular issue. *See, e.g., Dice v. State,* 825 P.2d 379,

384–85 (Wyo.1992) and *Browder v. State,* 639 P.2d 889, 893–95 (Wyo.1982). I hope they reflect on their solemn responsibilities. I hope they rededicate themselves to pursuing the ideal of justice, of fairness, of due process. I hope they get the message. The survival of our system of justice depends on it.